**LEWIS BRISBOIS BISGAARD & SMITH LLP**
KATHLEEN M. WALKER, SB # 156128
  E-Mail: Kathleen.Walker@lewisbrisbois.com
LYNNETTE A. CHRISTOPOULOS, SB # 192123
  E-Mail: Lynnette.Christopoulos@lewisbrisbois.com
633 West 5th Street, Suite 4000
Los Angeles, California 90071
Telephone: 213.250.1800
Facsimile: 213.250.7900

Attorneys for Defendants, GLENHAVEN
HEALTHCARE LLC; CARAVAN
OPERATIONS CORP.; MATTHEW KARP and
BENJAMIN KARP

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| JACKIE SALDANA, CELIA SALDANA, RICARDO SALDANA JR., and MARIA SALDANA, as individuals and as successors and heirs of RICARDO SALDANA, deceased,<br><br>              Plaintiffs,<br><br>     vs.<br><br>GLENHAVEN HEALTHCARE LLC, a California corporation; CARAVAN OPERATIONS CORP., a California corporation; MATTHEW KARP, an individual; BENJAMIN KARP, an individual, and DOES 1 through 100, inclusive,<br><br>              Defendants. | CASE NO. 2:20-cv-05631 FMO-MAAx<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE RULE 12(b)(6), 12(e) and 12(f) ; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**DATE:      September 3, 2020**<br>**TIME:      10:00 a.m.**<br>**COURTROOM: 6D**<br><br>[*Filed Concurrently With [Proposed] Order*]<br><br>The Hon. Fernando M. Olguin<br><br>Trial Date:     None Set |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on September 3, 2020 at 10:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 6D, before the Honorable

Fernando M. Olguin, located at 350 W. 1st St, 6th Floor, Los Angeles, California 90012, Defendants GLENHAVEN HEALTHCARE LLC, CARAVAN OPERATIONS CORP., MATTHEW KARP and BENJAMIN KARP ("Defendants"), move to dismiss the following claims from Plaintiffs' First Amended Complaint:

1.     As to the First Cause of Action–Elder Abuse, Second Cause of Action–Willful Misconduct, Third Cause of Action–Custodial Negligence, and Fourth Cause of Action–Wrongful Death, JACKIE SALDANA, CELIA SALDANA, RICARDO SALDANA JR., and MARIA SALDANA ("Plaintiffs") fail to state a claim against the Defendants given the immunities enunciated at 42 U.S.C. § 247d-6d (the "PREP Act"). Defendants request this Court issue an Order of dismissal.

2.     As to the Second Cause of Action–Willful Misconduct–Plaintiffs further fail to state a claim against the Defendants pursuant to Federal Rules of Civil Procedure, Rule 12(b)(6) and 12(e) because the PREP Act provides that the exclusive jurisdiction for any such claim is in the United States District Court for the District of Columbia. Defendants request this Court issue an Order of dismissal.

3.     As to the First Cause of Action–Elder Abuse, Second Cause of Action–Willful Misconduct, and Third Cause of Action–Custodial Negligence, Plaintiffs fail to state a cause of action as successors in interest. Pursuant to Federal Rules of Civil Procedure, Rule 12(b)(6) and (e), Defendants request this Court issue an Order of dismissal.

4.     As to the First Cause of Action–Elder Abuse, Plaintiffs fail to state a claim for direct liability against Defendants CARAVAN OPERATIONS CORP., MATTHEW KARP, and BENJAMIN KARP. Pursuant to Federal Rules of Civil Procedure, Rule 12(b)(6) and (e), Defendants request this Court issue an Order of dismissal.

5.     As to the First Cause of Action–Elder Abuse, Plaintiffs fail to state a claim for elder abuse because no specific facts are alleged to demonstrate

Defendants denied or withheld services or egregiously neglected care to Decedent or acted recklessly, or with oppression, malice or fraud. Further, no facts are alleged regarding a causal link between Defendants' provision of PPE, testing and isolation of patients and Decedent's alleged injuries and death. Defendants request this Court issue an Order of dismissal.

6.     As to the Second Cause of Action–Willful Misconduct, Plaintiffs fail to state a claim because they fail to state facts regarding Defendants' positive intent to do harm or actual or constructive knowledge of the peril to be apprehended or that injury is probable. Pursuant to Federal Rules of Civil Procedure, Rule 12(b)(6) and (e), Defendants request this Court issue an Order of dismissal.

7.     As to the Third Cause of Action–Custodial Negligence, Plaintiffs fail to state a claim because insufficient facts are alleged regarding duty, breach or proximately caused injury. Pursuant to Federal Rules of Civil Procedure, Rule 12(b)(6) and (e), Defendants request this Court issue an Order of dismissal.

8.     As to the Fourth Cause of Action–Wrongful Death, insufficient facts are alleged regarding duty, breach or proximately caused injury. Pursuant to Federal Rules of Civil Procedure, Rule 12(b)(6) and (e), Defendants request this Court issue an Order of dismissal.

9.     Defendants move to strike pursuant to Federal Rules of Civil Procedure, rule 12(f), the allegations regarding punitive damages as they are procedurally improper, are factually insufficient and immaterial and improper. No ultimate facts regarding recklessness, malice, oppression or fraud are alleged. Further, no facts are alleged that an officer, director or managing agent of corporate defendants ratified or had knowledge of the wrongful conduct.

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities attached hereto, Plaintiffs' First Amended Complaint, the Court's file in this action, Defendants' Request for Judicial Notice filed concurrently herewith, all matters of which this Court must or may take judicial notice and on

1 such further evidence and argument as may be presented before or at the hearing on
2 this matter.

3       **<u>STATUS OF MEET AND CONFER DISCUSSIONS</u>**

4      This motion is made following the conference of counsel pursuant to L.R.7-3,
5 which Defendants commenced relative to Plaintiffs' first amended complaint in
6 writing on June 24, 2020, June 29, 2020, June 30, 2020, July 1, 2020, and July 27,
7 2020. (*See Declaration of Lynnette A. Christopoulos*, filed concurrently herewith.)

8
9 DATED: July 30, 2020         LEWIS BRISBOIS BISGAARD & SMITH LLP

10
11                           */s/* Lynnette A. Christopoulos

                 By: _____
12                        Kathleen M. Walker
13                        Lynnette A.Christopoulos
14                        Attorneys for Defendants GLENHAVEN
                       HEALTHCARE LLC; CARAVAN
15                        OPERATIONS CORP.; MATTHEW
16                        KARP, an individual; and BENJAMIN
                       KARP, an individual

17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................ 1

II.     FACTUAL AND PROCEDURAL BACKGROUND ...................................... 1

        A.      Procedural Background. ............................................................ 1

        B.      Factual Background. ................................................................. 1

III.    LEGAL STANDARD UNDER RULE 12(B)(6) ...................................... 3

        A.      Plaintiffs Fail to Meet the *Iqbal* Standard. ................................ 3

        B.      Dismissal Without Leave to Amend ........................................... 6

IV.     PLAINTIFFS HAVE NOT ESTABLISHED THEIR RIGHT TO BRING THE CLAIMS ASSERTED AS DECEDENT'S SUCCESSORS IN INTEREST. .................................................................. 6

V.      THE PREP ACT BARS THE CLAIMS ASSERTED IN THE FAC. .............. 6

        A.      The PREP Act Immunities Bar Each of the Claims Asserted By Plaintiffs. ................................................................... 6

        B.      The Allegations of Willful Misconduct are Insufficient to State a Claim Under the PREP Act. ................................................ 12

        C.      Even if a Willful Misconduct Claim Could be Maintained, This Court Is the Wrong Court to Hear It. ..................................... 15

VI.     THE ELDER ABUSE CAUSE OF ACTION IS INSUFFICIENT AS A MATTER OF LAW. .......................................................................... 15

        A.      Neglect and Recklessness Are Not Sufficiently Alleged. .................... 15

        B.      A Causal Link Between Alleged Neglect and Injury Is Not Alleged. ............................................................................... 17

        C.      The Elder Abuse Claim Also Cannot Be Sustained as to Defendants Caravan Operations Corp., Matthew Karp or Benjamin Karp Who Did Not Have a Custodial Relationship with Decedent. .......................................................................... 18

VII.    THE CUSTODIAL NEGLIGENCE AND WRONGFUL DEATH CLAIMS ARE INSUFFICIENT. ............................................................ 20

VIII.   THE ALLEGATIONS AND PRAYER FOR PUNITIVE DAMAGES SHOULD BE STRICKEN. ..................................................................... 21

IX.     CONCLUSION ................................................................................ 233

# TABLE OF AUTHORITIES

**Page**

## CASES

*Ashcroft v. Iqbal*,
 556 U.S. 662, 129 S. Ct. 1937, 1949 173 L. Ed. 2d 868 (2008) ...................................... 4, 5

*Bell v. Hood*,
 327 U.S. 678 (1946) ...................................................................................... 4, 5, 12, 14

*Cisneros v. Instant Cap. Funding Group, Inc.*,
 263 F.R.D. 595, 606 (E.D. Cal. 2009)........................................................................ 19

*Conway v. Geithner*,
 No. C 12-0264 CW, 2012 WL 1657156 *2 (N.D. Cal. 2012) ..................................... 6

*De La Cruz v. Tormey*,
 582 F. 2d 45 (9th Cir. 1978)...................................................................................... 3

*Groten v. California*,
 251 F.3d 844 (9th Cir. 2001)..................................................................................... 5

*In re Stac Electronics Securities Litigation*,
 89 F.3d 1399 (9th Cir. 1996)..................................................................................... 14

*McHenry v. Renne*,
 84 F.3d 1172 (9th Cir. 1996)..................................................................................... 19

*Moore v. City of Costa Mesa*,
 886 F.2d 260 (9th Cir. 1989)..................................................................................... 5

*Moran v. Peralta Comty. Coll. Dist.*,
 825 F. Supp. 891 (N.D. Cal. 1993) ........................................................................... 5

*Partington v. Bugliosi*,
 56 F.3d 1147 (9th Cir. 1995)..................................................................................... 6

*SEC v. Cross Fin'l Services, Inc.*,
 908 F. Supp. 718 (C.D. Cal.1995).............................................................................. 3

*Sidney-Vinstein v. A.H. Robins Co.*,
 697 F.2d 880 (9th Cir. 1983)..................................................................................... 21

*Strigliabotti v. Franklin Resources, Inc.*,
 398 F. Supp. 2d. 1094 (N.D. Cal. 2005) ................................................................... 5

*Susilo v. Wells Fargo Bank, N.A.*,
 796 F. Supp. 2d 1177 (C.D. CA 2011)...................................................................... 5

*Swartz v. KPMG LLP*,
 476 F.3d 756 (9th Cir. 2007)..................................................................................... 19

1

*Timperley v. Chase Collection Service*,
        (1969) ..................................................................................... 22

*Vess v. Ciba-Geigy Corp.*,
        317 F.3d 1097 (9th Cir. 2003) ................................................. 13

*Whittlestone, Inc. v. Handi-Craft Co.*,
        618 F.3d 90 (9th Cir. 2010) ....................................................... 5

*Zinermon v. Burch*,
        494 U.S. 113 (1990) ................................................................... 3


**STATE COURT CASES**

*Covenant Care, Inc. v. Superior Court*,
        32 Cal.4th 771 (2004) ......................................................... 17, 18

*Delaney v. Baker*,
        20 Cal.4th 23 (1999) ................................................................ 18

*Grieves v. Superior Court*,
        157 Cal.App.3d 159 (1984) ..................................................... 22

*Parker v. St. Lawrence County Pub. Health Dept.*,
        102 A.D. 3d 140 (2012 .............................................................. 13

*Perlin v. Fountain View Management, Inc.*,
        163 Cal.App.4th 657 (2008) .................................................... 19

*Winn v. Pioneer Medical Group, Inc.*,
        63 Cal.4th 148 (2016) .............................................................. 19


**FEDERAL STATUTORY AUTHORITIES**

42 U.S.C. § 247d-6d ............................................................. 2, 7, 12, 13

42 U.S.C. § 247d-6d(a)(1) ............................................................ 9, 12

42 U.S.C. § 247d-6d(c)(1)(A) ..................................................... 13, 16

42 U.S.C. § 247d-6d(d)(1) ................................................................ 13

42 U.S.C. § 247d-6d(e)(1) ................................................................ 16

42 U.S.C. § 247d-6d(e)(3) ......................................................... 13, 16

42 U.S.C. § 247d-6d(i)(2)(B)(iv) ..................................................... 12

42 U.S.C. § 247d-6d(i)(6) ................................................................ 12

42 U.S.C. § 247d-6d(i)(8) ................................................................ 12

42 U.S.C. 247d .................................................................................................. 8

42 U.S.C. 247d-6d ...................................................................................... 7, 13

42 U.S.C. 247d-6d(a)(1) ................................................................................ 10

42 U.S.C. 247d-6d(a)(2)(B) ............................................................................. 9

42 U.S.C. 247d-6d(d) ................................................................................... 10

42 U.S.C. 247d-6d(e) ................................................................................... 11

42 U.S.C. 247d-6d(i)(1) ................................................................................ 10

42 U.S.C. 247d-6d(i)(2) ................................................................................. 9

42 U.S.C. 247d-6d(i)(6) ................................................................................. 9

42 U.S.C. 247d-6d(i)(7) ................................................................................ 10

42 U.S.C. 247d-6d(i)(7)(i)(II) ......................................................................... 8

42 U.S.C. 247d-6d(i)(8) ................................................................................ 10

42 U.S.C. 247d-6e ........................................................................................ 10

42 U.S.C. 247d-6e(d)(5) ................................................................................ 11

42 U.S.C. 247d-6e, respectively ...................................................................... 7

Economic Security (CARES) Act, Public Law 116-136, .................................... 8

**STATE STATUTORY AUTHORITIES**

Cal. Civ. Code § 3294 ................................................................................... 22

Cal. Civ. Code § 3294(c) ............................................................................... 22

Cal. Civ. Proc. Code § 377.32 ......................................................................... 7

Cal. Civ. Proc. Code , §425.13 ...................................................................... 22

Cal. Welf. & Inst. Code § 15610.57 .......................................................... 16, 17

Cal. Welf. & Inst. Code, §15657 .................................................................... 17

**FEDERAL RULES AND REGULATIONS**

21 CFR 878.4040 ......................................................................................... 11

42 C.F.R. pt. 110 .......................................................................................... 10

Fed. R. Civ. P. 8(a)(2) .................................................................................................... 5

Fed. R. Civ. P. 12(b)(6) ................................................................................................. 4

Fed. R. Civ. P. 12(b), (e) .............................................................................................. 2

Fed. R. Civ. P. 12(f) ..................................................................................................... 22

Fed. R. Civ. Proc. 12(f) ................................................................................................ 6

## I.   INTRODUCTION

Ricardo Saldana (Decedent) was a long time resident of a skilled nursing facility operated by Glenhaven Healthcare LLC. Decedent died on April 13, 2020, allegedly due to the COVID-19 virus. Defendants move to dismiss pursuant to Fed. R. Civ. P. 12(b), (e), and (f) because Plaintiffs have failed to state a claim. The Federal PREP Act and California immunity statutes bar all of their claims. Further, Plaintiffs fail to allege necessary elements of each of the four causes of action asserted in this action, which was removed from California Superior Court. In addition, Plaintiffs fail to allege violations of regulations or directives that were applicable during the national state of emergency resulting from the COVID-19 pandemic. Defendants move to strike the punitive damages allegations due to plaintiffs' failure to allege any specific facts or plausible grounds for an award of punitive damages.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Procedural Background.

On May 21, 2020, Plaintiffs filed a complaint against Defendants in the Superior Court of the State of California, County of Los Angeles. On June 10, 2020, Plaintiffs filed a First Amended Complaint (FAC), the operative complaint.[1] On June 25, 2020, Defendants filed a Notice of Removal of the State Court Action to Federal Court. Dkt. 3.

### B.   Factual Background.

Plaintiffs' FAC alleges that as a result of inappropriate use of protective equipment such as face masks and gowns and other measures such as testing, Ricardo Saldana, a resident of the skilled nursing facility Defendant Glenhaven Healthcare LLC, died on April 13, 2020 from coronavirus. Dkt. 3. His wife and

---

[1] Dkt. 3.

1

adult children filed the original complaint five weeks later, followed by a First Amended Complaint. Dkt. 1.[2]   The FAC names as defendants two entities—Glenhaven Healthcare, LLC and Caravan Operations Corp., and two individuals—Matthew Karp and Benjamin Karp, who based upon information and belief are alleged to be the sole owners of Caravan and Glenhaven. Dkt. 3. at ¶¶ 10-14.

Each of the four causes of action are brought by all plaintiffs and are asserted against all defendants. The FAC generally alleges that Glenhaven intentionally concealed that a working employee had been exposed to the coronavirus from Mid-March to April 1. 2020, prohibited employees from wearing masks and gloves during the month of March 2020, failed to provide protective equipment and took no precautions to identify and isolate employees or residents infected with the virus or exposed to the virus. FAC, ¶¶ 1-2, 28, 31. Further, Glenhaven allegedly moved a resident who had been exposed to the virus into Decedent's room without telling him or his family. Id. at ¶ 2. According to plaintiffs, all of this was done to save money, avoid scrutiny from regulators and minimize knowledge of existence of the virus. Id. at ¶ 3.

The first cause of action is entitled Elder Abuse based on neglect. It alleges that defendants had "custody and care" of decedent and failed to protect Decedent from health and safety hazards and neglected him by providing him feeding and bathing by Glenhaven employees who were not in appropriate protective equipment. Id. at ¶¶ 38-40. The FAC further alleges Defendants failed to provide adequate funding and staffing to ensure necessary care was provided to him. Id. at ¶ 40.[3]

The second cause of action is entitled Willful Misconduct. It alleges

---

[2]   Because the parties all share the same last name, Ricardo Saldana will be referred to as "Decedent," for the sake of clarity. No disrespect is intended.

[3]   Because of the staffing shortages in skilled nursing facilities due to the COVID-19 pandemic, the California Department of Public Health issued an All Facilities Letter on March 30, 2020, suspending the State's staffing regulations, among others. See RJN, Exh. M.)

defendants failed to comply with the standard of care, and knew or should have known that failing to comply with the standard of care by providing care in which healthcare providers lacked appropriate safety equipment and failing to isolate COVID positive residents posed a peril to Decedent. FAC, ¶ 47-48. Plaintiffs further allege Defendants breached their duties under the standard of care by forbidding staff to wear appropriate PPE during the month of March 2020, failing to provide staff with PPE, failing to provide staff with adequate PPE, failing to disclose and isolate known or suspected COVID-19 carriers, and failing to test quickly. Id. at ¶ 49. According to Plaintiffs, Defendants decide to limit its purchase of PPE to enhance its profitability. Id. at ¶ 50. Defendants also allegedly violated various federal and state laws and regulations, which were a contributing factor to Decedent's death. Id. at ¶ 51.

The third cause of action entitled Custodial Negligence alleges Defendants owed Decedent a duty of ordinary care and breached that duty by failing to implement policies, procedures and safety measures to prevent Decedent from being exposed to the coronavirus. Id. at ¶¶ 56-58.

The fourth and final cause of action is entitled Wrongful Death. It alleges that as result of the foregoing, Decedent died and his heirs have been deprived of his care, comfort and society. Id. at ¶ 61.

## III.   LEGAL STANDARD UNDER RULE 12(B)(6)

### A.   Plaintiffs Fail to Meet the *Iqbal* Standard.

A Federal Rule of Civil Procedure 12(b)(6) motion tests the legal sufficiency of the claims asserted in a complaint. The Court must decide whether the facts alleged, if true, would entitle plaintiff to some form of legal remedy. *De La Cruz v. Tormey*, 582 F. 2d 45, 48 (9th Cir. 1978); *SEC v. Cross Fin'l Services, Inc.*, 908 F. Supp. 718, 726-727 (C.D. Cal.1995). For purposes of such a motion, the court assumes as true all well-pleaded facts in a complaint and attached exhibits and views them in a light most favorable to the plaintiff. *Zinermon v. Burch*, 494 U.S.

113, 118 (1990). The court need not, however, accept as true legal characterizations, conclusory allegations, unreasonable inferences or unwarranted deductions of fact. The sole issue raised by a Rule 12(b)(6) motion is whether the facts pleaded would, if established, support a valid claim for relief. *Bell v. Hood*, 327 U.S. 678, 682-83 (1946).

A pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While this pleading standard does not require detailed factual allegations, it does demand more than an unadorned the-defendant-unlawfully-harmed-me accusation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 173 L. Ed. 2d 868, 883 (2008). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 127 S. Ct. at 1965). Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* Factual allegations must be enough to raise a right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct., 1955, 1965, 167 L. Ed. 2d 929 (2007).

In interpreting Rule 8, the Supreme Court emphasized in *Iqbal* that "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is ***plausible*** on its face." *Iqbal,* 556 U.S. at 678 (quotation omitted, emphasis added). Whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. In this "context-specific" exercise, courts are not bound to accept as true a legal conclusion couched as fact. *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 679 (Legal conclusions are "not entitled to the assumption of truth."). In sum, on a 12(b)(6) motion, conclusory statements should be set aside and then, assuming the veracity of any well-pleaded factual allegations, the Court should "determine whether they ***plausibly*** give rise to an entitlement to relief." *Iqbal,* 556 U.S. at 679 (emphasis added).

1    Dismissal is proper where "it appears beyond doubt that plaintiff can prove no
2    set of facts in support of his claim which would entitle him to relief." *Moore v. City*
3    *of Costa Mesa*, 886 F.2d 260, 262 (9th Cir. 1989).  Similarly, dismissal is proper
4    where an affirmative defense or other bar to relief is apparent from the face of the
5    complaint.  *Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001).  Further, where
6    a complaint alleges several distinct claims for relief, it is common practice to apply
7    Rule 12(b)(6) to individual causes of action.  *Moran v. Peralta Comty. Coll. Dist.*,
8    825 F. Supp. 891, 894-95 (N.D. Cal. 1993); *Strigliabotti v. Franklin Resources, Inc.*,
9    398 F. Supp. 2d. 1094, 1097 (N.D. Cal. 2005).  The sole issue raised by a Rule
10   12(b)(6) motion is whether the facts pleaded, if established, would support a valid
11   claim for relief.  *Bell v. Hood*, 327 U.S. 678, 682-83 (1946).

12         Under the legal standard for a Rule 12(b)(6) motion, Plaintiffs have not and
13   cannot allege facts sufficient to support any of the claims alleged in the FAC. The
14   FAC fails to meet the *Iqbal* standard because it simply recites some of the elements
15   of each cause of action and makes boilerplate allegations not supported by "further
16   factual enhancement." The FAC is replete with factually devoid legal conclusions
17   couches as facts. In the absence of specific alleged facts, the Causes of Action in the
18   FAC are not plausible on their face. It is through the prism of this disconnect
19   between concrete facts and conclusory allegations that the Court should examine
20   Defendants' motion to dismiss and, specifically, the plausibility of Plaintiffs' ill-
21   pled Complaint.

22         Defendants may move to strike any "any redundant, immaterial impertinent or
23   scandalous matter." Fed. R. Civ. Proc. 12(f); *Whittlestone, Inc. v. Handi-Craft Co.*,
24   618 F.3d 90, 973-74 (9th Cir. 2010). The court may also strike from the prayer relief
25   that is not available as a matter of law. *Susilo v. Wells Fargo Bank, N.A.,* 796 F.
26   Supp. 2d 1177, 1196 (C.D. CA 2011). The court should strike the punitive damage
27   allegations and prayer for relief.

28

### B.   Dismissal Without Leave to Amend

When granting a motion to dismiss, the court is generally required to grant the plaintiff leave to amend.  However, leave to amend is not warranted if an amendment would be futile because the pleading could not possibly be cured by the allegation of other facts.  *Partington v. Bugliosi*, 56 F.3d 1147, 1162 (9th Cir. 1995) (denying leave to amend where plaintiff had failed to state a claim for defamation); see also *Conway v. Geithner*, No. C 12-0264 CW, 2012 WL 1657156 *2 (N.D. Cal. 2012) (denying leave to amend in case of absolute immunity because the amendment would be futile). The FAC fails to allege a valid claim for relief and leave to amend is futile with regard to the claims sought to be dismissed.

## IV.   PLAINTIFFS HAVE NOT ESTABLISHED THEIR RIGHT TO BRING THE CLAIMS ASSERTED AS DECEDENT'S SUCCESSORS IN INTEREST.

The FAC alleges that Plaintiffs are Decedent Ricardo Saldana's successors in interest and that the affidavit required by California Code of Civil Procedure section 377.32 is attached to the complaint. FAC, ¶ 9. The affidavit is required to establish plaintiffs' right to bring a claim as Decedent's successor in interest and without it, Plaintiffs cannot bring the survival claims asserted in the First, Second and Third Causes of Action in the FAC. No such affidavit is attached to the FAC. The First, Second and Third causes of action should, therefore, be dismissed.

## V.   THE PREP ACT BARS THE CLAIMS ASSERTED IN THE FAC.

### A.   The PREP Act Immunities Bar Each of the Claims Asserted By Plaintiffs.

The FAC alleges claims based on elder abuse-neglect, willful misconduct, negligence, and wrongful death. Each of these claims is barred by the immunity from liability provided by the Public Readiness and Emergency Preparedness Act ("PREP Act") enacted on December 30, 2005.

The PREP Act amended the Public Health Service (PHS) Act, adding Section 319F-3, which addresses liability immunity, and Section 319F-4, which creates a

compensation program. These sections are codified at 42 U.S.C. 247d-6d and 42 U.S.C. 247d-6e, respectively. The purpose of the PREP Act is to encourage the quick and efficient deployment of countermeasures during a public health crisis, like the current COVID-19 pandemic.

In addition, effective March 27, 2020, the Coronavirus Aid, Relief, and Economic Security (CARES) Act, Public Law 116-136, was enacted in response to the coronavirus pandemic. The CARES Act amended section 319F-3(i)(1)(D) of the PHS Act, first added by the Families First Coronavirus Response Act, Public Law 116-127 on March 18, 2020. These amendments created expanded categories of covered countermeasures eligible for liability immunity under the PREP Act, which the Secretary of the Department of Health and Human Services ("HHS Secretary") determines to be a priority for use during a public health emergency declared under section 319 of the PHS Act.

On January 31, 2020, the HHS Secretary declared a public health emergency, pursuant to section 319 of the PHS Act (42 U.S.C. 247d) for the entire United States, to aid in the response of the nation's health care community to the COVID-19 outbreak. On March 10, 2020, the HHS Secretary issued a Declaration under the PREP Act for medical countermeasures against COVID-19. 85 FR 15198 (March 17, 2020). (See RJN, Exh. A.)The Declaration was effective as of February 4, 2020.

On April 10, 2020, the HHS Secretary amended the March 10, 2020 Declaration under the PREP Act to extend liability immunity to covered countermeasures authorized under the CARES Act. 85 FR 21012 (April. 15, 2020). That amendment was effective March 27, 2020. (See RJN, Exh. B.)

Finally, on June 4, 2020, The HHS Secretary further amended the March 10, 2020 Declaration to clarify that covered countermeasures under the Declaration include qualified products that limit the harm COVID-19 might otherwise cause. 42 U.S.C. 247d-6d(i)(7)(i)(II). (See RJN, Exh. C.)

Both the PREP Act, HHS Declaration and the subsequent amendments are

Federal statutes that apply specifically to healthcare providers, program planners, and facilities such as Defendants in the administration of countermeasures to prevent or limit the spread of COVID-19. The PREP Act provides for immunity from suit and liability:

> "[A] "covered person shall be immune from suit and liability under Federal and State law with respect to all claims of loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure if a declaration under subsection (b) has been issued with respect to such countermeasure."

42 U.S.C. § 247d-6d(a)(1). As mentioned above, the HHS Secretary issued the requisite Declaration on March 10, 2020.

The immunity "applies to any claim for loss that has a causal relationship with the administration to or use by an individual of a covered countermeasure, including a causal relationship with the design, development, clinical testing or investigation, manufacture, labeling, distribution, formulation, packaging, marketing, promotion, sale, purchase, donation, dispensing, prescribing, administration, licensing, or use of such countermeasure." 42 U.S.C. 247d-6d(a)(2)(B).

A "covered person" is defined, as relevant here, as a person or entity that is a distributor, program planner, or qualified person who prescribed, administered, or dispensed such countermeasure, or an official, agent or employee of such a person or entity. 42 U.S.C. 247d-6d(i)(2), (5).

A "program planner" means, as relevant here, a person who supervised or administered a program with respect to the administration, dispensing, distribution, provision, or use of a security countermeasure or a qualified pandemic or epidemic product, or provides a facility to administer or use a covered countermeasure. 42 U.S.C. 247d-6d(i)(6).

A "qualified person" means, with respect to the administration or use of a covered countermeasure, a licensed health professional or other individual who is

authorized to prescribe, administer, or dispense such countermeasures under the laws of the State in which the countermeasure was prescribed, administered, or dispensed. 42 U.S.C. 247d-6d(i)(8).

A "covered countermeasure" means a qualified pandemic or epidemic product, a security countermeasure, drug, biological product or device that is authorized for emergency use, or a respiratory protective device approved by the National Institute for Occupational Safety and Health, that the Secretary determines to be a priority for use during a public health emergency. 42 U.S.C. 247d-6d(i)(1).

Further, a qualified pandemic or epidemic product is one that is "manufactured, used, designed, developed, modified, licensed, or procured" to "diagnose, mitigate, prevent, treat, or cure a pandemic or epidemic" or "to limit the harm such pandemic or epidemic might otherwise cause" that has been approved or cleared by the Federal Food, Drug, and Cosmetic act or licensed under section 262 of this title, and authorized for emergency use. 42 U.S.C. 247d-6d(i)(7).

Under the PREP Act, the sole remedy for a loss or injury is under the Countermeasures Injury Compensation Program ("CICP), a no-fault, speedy compensation system that replaces expensive and uncertain litigation. 42 U.S.C. 247d-6d(a)(1); see, Department of Health & Human Services "Advisory Opinion on the Public Readiness and Emergency Preparedness Act and the March 10, 2020 Declaration under the Act, April 17, 2020, as Modified on May 19, 2020." (RJN, Exh. D); The CICP process, which replaces certain damages claims that would normally be brought in court, is detailed at 42 U.S.C. 247d-6e and 42 C.F.R. pt. 110.

If, however, an individual decides not to accept the compensation under the CICP, the injured individual may pursue a tort claim, but it must be filed in the United States District Court for the District of Columbia, and may *only* be pursued if the claim involves *willful misconduct* and meets other requirements for suit under the PREP Act. 42 U.S.C. 247d-6d(d) ["the sole exception to the immunity from suit and liability . . . shall be for an exclusive Federal cause of action], which "shall be

filed and maintained only in the United States District Court for the District of Columbia." 42 U.S.C. 247d-6d(e). If the individual accepts compensation from the CICP, or if there is no willful misconduct, *the individual does not have a tort claim that can be filed in a United States Federal or State court.* 42 U.S.C. 247d-6e(d)(5).

On May 19, 2020, the DHHS issued an omnibus advisory opinion on the PREP Act, and the March 10, 2020 Declaration under the Act ("Advisory Opinion"). (See RJN, Exh. D.) The Advisory Opinion was issued to address most questions and concerns about the scope and application of the PREP Act during this time of "national emergency." Id. The Advisory Opinion summarizes the requirements for a qualified pandemic or epidemic product to fall within the PREP Act:

(1) Must be used for COVID-19; and

(2) Must be-

(a) approved, licensed, or cleared by the FDA;

(b) authorized under an EUA [emergency use authorization]'

(c) described in an EUI [emergency use instructions]; *or*

(d) used under either an Investigational new Drug (IND) application or an Investigational Device Exemption.

Id., p. 4.

Attached to the Advisory Opinion is a list of the "covered countermeasures" for which EUA's have been issued by the United States Food and Drug Administration. See, RJN, Exh. N, Appendix A. The list includes 12 pages of COVID-19 test kits, as well as face shields, gowns, shoe covers, non-surgical isolation gowns, surgical caps, properly labeled non-surgical masks, and certain non-NIOSH approved respirators. While surgical masks are not on the list, such masks are Class II medical devices cleared by the FDA for use. 21 CFR 878.4040. Thus, COVID-19 test kits, paper surgical masks, and disposable gowns are "qualified pandemic or epidemic products" and "covered countermeasures" under

the PREP Act.

Here, the FAC alleges neglect and negligence pertaining to the administration, distribution, dispensing and use of safety equipment designed to prevent the spread of COVID-19, including personal protective equipment, such as masks, gowns, and testing, which constitute covered countermeasures under the PREP Act. (FAC, ¶¶ 25-26, 31-32)

Defendants are covered persons as contemplated by 42 U.S.C. § 247d-6d under the PREP Act as healthcare providers who are dispensing, administering and/or using a covered countermeasure during the COVID-19 outbreak and emergency. 42 U.S.C. § 247d-6d(i)(8) Defendants further qualify as program planners who supervise or administer a program with respect to the administration, dispensing, distribution, provision or use of a security countermeasure or a qualified pandemic or epidemic product. 42 U.S.C. § 247d-6d(i)(6). Furthermore, Defendants provide a facility to administer or use a covered countermeasure to prevent and mitigate against the spread of COVID-19. 42 U.S.C. § 247d-6d(i)(2)(B)(iv) and (v).

The FAC's allegations relate to and are premised on the inadequacy and inappropriateness of measures taken by Defendants to prevent or mitigate the spread of COVID-19 in dispensing, administration and use of covered countermeasures such as masks, gowns, test kits and other personal protection equipment at the Glenhaven Healthcare skilled nursing facility licensed by the State of California, which employs licensed nursing personnel who are authorized to prescribe, administer, and dispense the covered countermeasures which Plaintiffs allege were improperly used, distributed, administered or dispensed. Accordingly, pursuant to 42 U.S.C. § 247d-6d(a)(1), As referenced in Plaintiffs' FAC, the precautions at issue concern Defendants' use of facemasks and other personal protective equipment and testing as a countermeasure to prevent or mitigate the spread of COVID-19. These are the precise measures mentioned in the PREP Act and HHS Declaration and subsequent amendments issued to address COVID-19.

Defendants are "immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from" the allegations contained in the FAC. 42 U.S.C. 247d-6d. See *Kehler v. Hood,* 2012 U.S. Dist. LEXIS 74502 (E.D. Missouri); *Parker v. St. Lawrence County Pub. Health Dept.,* 102 A.D. 3d 140 (2012 N.Y. App. Div.); *Casabianca v. Mount Sinai Med. Ctr., Inc.,* 2014 N.Y. Misc. LEXIS 5998 2014 (N.Y. Supreme Court). Plaintiffs do not have a tort claim and the FAC must be dismissed.

## B.   <u>The Allegations of Willful Misconduct are Insufficient to State a Claim Under the PREP Act.</u>

Under the PREP Act, "willful misconduct" is the sole exception to immunity. 42 U.S.C. § 247d-6d(d)(1)[the sole exception to the immunity from suit and liability of covered persons set forth in subsection (a) shall be for an exclusive Federal cause of action against a covered person for death or serious physical injury proximately caused by willful misconduct…." Willful misconduct is defined as "an act or omission that is taken intentionally to achieve a wrongful purpose; knowingly without legal or factual justification; and in disregard of a known or obvious risk that is so great as to make it highly probably that the harm will outweigh the benefit." 42 U.S.C. § 247d-6d(c)(1)(A). While the FAC contains a claim entitled "willful misconduct," the claim is deficient and must be dismissed for several reasons.

The PREP Act requires that allegations of willful misconduct be pleaded with particularity, including: (1) each act or omission by each covered person that is alleged to constitute willful misconduct relating to the covered countermeasure administered to or used by the person on whose behalf the complaint was filed; (2) facts supporting the allegation that such alleged willful misconduct proximately caused the injury claimed; and (3) facts supporting the allegation that the person on whose behalf the complaint was filed suffered death or serious physical injury. 42 U.S.C. § 247d-6d(e)(3). The particularity requirement necessitates, *inter alia,*

allegations regarding the "who, what, when, where, and how" of the willful misconduct. *Vess v. Ciba-Geigy Corp.,* 317 F.3d 1097, 1106 (9th Cir. 2003). The FAC fails to state sufficient facts upon which relief may be granted under the PREP Act exception for willful misconduct.

The FAC alleges Glenhaven did not provide employees with any PPE for the month of March and did not allow the use of personal masks or bandanas during that time. FAC, ¶¶ 25-26. There are no facts alleged, however, that constitute willful misconduct as defined by the PREP Act. In addition, there are no facts alleged that establish Defendants took any action in disregard of a known or obvious risk, as information about the novel coronavirus and how it was spread and how to prevent its spread was in constant flux and constantly evolving during March and April 2020.[4] (See RJN, Exh. F-L, O.)[5]

Furthermore, there are no *facts* alleged to establish that the alleged willful misconduct proximately caused Decedent's death. At most, the FAC alleges the *conclusion* that Decedent's death was the result of Glenhaven's "actions and omissions." FAC, ¶ 35. But, there are no factual allegations that demonstrate the

---

[4]   The FAC includes general allegations regarding media coverage of a coronavirus outbreak in a nursing home in Washington in late February. FAC, ¶ 24, yet such allegations are immaterial and improper and cannot form the basis for imputing knowledge of what constitutes "reasonable measures" to prevent exposure to the coronavirus.

[5] On March 10, 2020, HHS stated it "will continue to explore more flexibilities and innovation approaches…to allow health care entities to meet the critical health needs of the country." Exh. F; on March 20, 2020, the CDC advised Administrators at retirement communities to "encourage" staff to clean frequently touched area and wash their hands often with soap and water. Exh. G; Also on March 20, 2020, the CDC provided healthcare facilities with steps they "can take now to prepare for COVID-19." Exh. H; the CDC on April 2, 2020, provided guidance regarding risk of severe illness from COVID-19 "based on what we currently know…" Exh. I; on April 10, 2020, the CDC again acknowledged supply chain concerns with regard to PPE and provided guidance on priority procedures for use of respirators. Exh. J; the CDPH also acknowledged the issues with PPE shortages and optimization strategies. Exh. K; and it was not until April 24, 2020, when the Los Angeles Department of Public Health decided to enact an Order prohibiting visitors from entering licensed congregate health care facilities. Exh. L; on March 9, 2020, HHS set forth revised guidelines for nursing homes recognizing the national shortage of PPE and issues with PPE that had been distributed by FEMA. As of March 9, 2020, HHS was advising nursing homes that if staff displayed symptoms they should stop and immediately put on a mask, as opposed to mandating mask usage by all staff. Exh. O.

13

necessary causal connection between Glenhaven's conduct and Decedent contracting and dying from COVID-19. No facts are alleged as to the manner or source of Decedents' infection with the virus. No facts are even alleged that any employee who was not provided PPE was infected with the virus, or that such an employee interacted directly with Decedent and that was how Decedent contracted COVID-19. There are no factual allegations of any scientific or medical evidence linking the transmittal method of COVID-19 to the presence or absence of any preventive measures such that the alleged willful misconduct and alleged injuries sustained by Decedent were preventable by Defendants. No facts establishing who, what, when, where and how Decedent contracted the virus. All that is left is mere speculation or surmise about how the virus was transmitted to Decedent, which is not sufficient to support a claim for willful misconduct. *Perry v. Rado,* 504 F.Supp.2d 1043, 1046 ["The court need not, however, accept as true conclusory allegations or legal characterizations, nor need it accept unreasonable inferences or unwarranted deductions of fact."] (citing *In re Stac Electronics Securities Litigation,* 89 F.3d 1399, 1403 (9th Cir. 1996). As the United States Supreme Court put it, "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action" is not enough. *Bell Atl. Corp. v. Twombly,* 127 S.Ct. at 1965, quoting 5 C. Wright 7 A. Miller, Federal Practice and Procedure § 1216, pp 235-236 (3d ed. 2004).

Nor are any facts alleged regarding what the standard of care was at the time Decedent contracted the virus as there was no standard of care regarding prevention, mitigation or treatment of the novel coronavirus during the constantly evolving and changing state of knowledge at the time Decedent died. (See, RJN, Exhibits F-L, O.) The FAC alleges Defendants knew or should have known that "their failure to comply with the standard of care, by providing care in which healthcare providers lacked appropriate safety equipment" such as masks and disposable gowns, among other things, posed a peril to Decedent. ¶ 47. Yet, the FAC is devoid of any

allegations regarding the standard of care at the time of Decedent's death, how Defendants failed to comply with the standard of care, or of any actual causal link between a healthcare provider's use of PPE and Decedent's death. Mere vague allegations that employees "lacked appropriate safety equipment" are factually insufficient to support the allegations of willful misconduct as defined by 42 U.S.C. § 247d-6d(c)(1)(A). FAC, ¶ 47. The FAC's allegations of willful misconduct fall woefully short of the requirement that the facts be alleged with particularity. 42 U.S.C. § 247d-6d(e)(3) ["the complaint shall plead with particularity each element of the plaintiff's claim]. The willful misconduct claim must be dismissed.

## C. Even if a Willful Misconduct Claim Could be Maintained, This Court Is the Wrong Court to Hear It.

Under the PREP Act, any claim for willful misconduct pertaining to the use, administration, and distribution of covered countermeasures to COVID-19 must be brought in the United States District Court for the District of Columbia. 42 U.S.C. § 247d-6d(e)(1), (5). Even if the willful misconduct claim had been alleged with sufficient particularity, which it was not, it must be dismissed as this court is not the court designated by statute to hear such claims.

## VI. THE ELDER ABUSE CAUSE OF ACTION IS INSUFFICIENT AS A MATTER OF LAW.

### A. Neglect and Recklessness Are Not Sufficiently Alleged.

The First Cause of Action for Elder Abuse in the FAC is alleged against all Defendants. FAC, p. 9, l. 4. The FAC alleges Defendants committed neglect as defined in Welfare & Institutions Code section 15610.57. Id. at ¶ 39. Section 15610.57, subdivision (a), defines "neglect as including '[t]he negligent failure of any person having the care or custody of an elder or a dependent adult to exercise that degree of care that a reasonable person in a like position would exercise.'"

In order to plead a cause of action for elder neglect under the Elder Abuse Act, the plaintiff must allege facts establishing that Defendants did the following:

- Had responsibility for meeting the basic needs of the elder, such as nutrition, hydration, hygiene or medical care;
- Knew of conditions that made the elder unable to provide for his own basic needs;
- Denied or withheld goods or services necessary to meet the elder's basic needs, either with knowledge that injury was substantially certain to occur or, if oppression, fraud or malice is alleged, with conscious disregard of the high probability of such injury;
- The neglect caused the elder to suffer physical harm, pain or mental suffering

*Carter v. Prime Healthcare Paradise Valley, LLC,* 198 Cal.App.4th 396, 406-407 (2011). Additionally, all of the facts constituting the neglect and establishing the causal link between the neglect and the injury 'must be pleaded with particularity,' in accordance with the pleading rules governing statutory claims." (*Covenant Care, Inc. v. Superior Court,* 32 Cal.4th 771, 790 (2004). There are no facts pled in the FAC to establish the elements required to state a claim for Elder Abuse under Welfare & Institutions Code section 15610.57.

The FAC alleges "basic necessary custodial care as feeding and bathing" Decedent *were* provided to Decedent. FAC, ¶ 40. However, Plaintiffs allege such basic services were provided by Glenhaven employees who were not in "appropriate protective equipment." Id.. But, "the statutory definition of 'neglect' speaks not of the *undertaking* of medical services, but of the failure to *provide* medical care." *Covenant Care, Inc. v. Superior Court, supra,* 32 Cal.4th at 783. On its face, the FAC alleges negligent provision of care, but does not disclose facts supporting the allegation that Glenhaven committed elder abuse by *failing* to provide care to Decedent.

Furthermore, to state a cause of action for elder abuse, Plaintiffs must make specific factual allegations indicating at least recklessness, i.e. a conscious or deliberate disregard of a high probability of injury, or oppression, fraud, or malice in the commission of the neglect. *Carter v. Prime Healthcare Paradise Valley LLC, supra,* 198 Cal.App.4th at 408; Cal. Welf. & Inst. Code, §15657. The FAC falls

woefully short of this requirement for stating a cause of action for elder abuse. As discussed above regarding the insufficiency of the allegations of willful misconduct, the FAC likewise does not set forth facts supporting the requisite recklessness, oppression, fraud or malice to state a claim for elder abuse. The term "neglect" as used in the Elder Abuse Act, is reserved for the "especially egregious abuse" proven to a "high standards" as opposed to ordinary or acts of medical negligence or even gross negligence. *Covenant Care, Inc. v. Superior Court, supra,* 32 Cal.4th at 771, 785, 790; *Delaney v. Baker,* 20 Cal.4th 23, 34-35 (1999)[elder abuse cause of action requires pleading of facts sufficient to establish defendant recklessly or maliciously engaged in "egregious conduct" amount to a "failure to provide medical care," as opposed to mere medical negligence].

Here, the FAC does not set forth facts showing "especially egregious abuse," as it sets forth no allegations regarding the standard of care, knowledge of the risk of injury, or evidence linking the transmittal method of COVID-19 to the presence or absence of any preventive measures Defendants allegedly failed to use or used properly. Nor does the FAC demonstrate a factual basis for the requisite recklessness, oppression, fraud or malice in Glenhaven's testing of staff and residents, or moving another resident into Decedent's room. As the FAC concedes, Glenhaven provided paper surgical masks and gowns to staff, implemented some safety measures in early April, began testing on or about April 7th-9th, 2020, and had a policy for isolating proven or suspected carriers of coronavirus, albeit allegedly not one that was "effective." FAC, ¶¶ 31-34. The allegations of improper use of PPE or other preventative measures are insufficient to support the heightened standard required to allege recklessness, oppression, fraud or malice for a claim for elder abuse.

### B.   A Causal Link Between Alleged Neglect and Injury Is Not Alleged.

Furthermore, facts constituting the neglect and establishing the causal link between the neglect and the injury "must be pleaded with particularity," in

accordance with the pleading rules governing statutory claims. *Carter v. Prime Healthcare Paradise Valley LLC, supra,* 198 Cal.App.4th at 407. To obtain enhanced remedies under the Elder Abuse Act, plaintiff must prove causation by clear and convincing evidence. *Perlin v. Fountain View Management, Inc.* 163 Cal.App.4th 657, 664 (2008). As demonstrated above, no factual allegations demonstrate a causal connection between the alleged inadequate supply of PPE, testing practices or isolation policies at Glenhaven and Decedent's death. For this reason, too, the FAC fails to state a claim for elder abuse.

### C.    The Elder Abuse Claim Also Cannot Be Sustained as to Defendants Caravan Operations Corp., Matthew Karp or Benjamin Karp Who Did Not Have a Custodial Relationship with Decedent.

In violation of Federal Rules of Civil Procedure, rules 8 and 9(b), the FAC names two separate entities (one corporation and one limited liability company) and two individuals collectively as defendants on each and every cause of action, without differentiation or articulating which wrong each defendant is allegedly liable for. The business entities and individuals are simply lumped together and collectively referred to as "Glenhaven." FAC, ¶ 14, The problematic nature of such a pleading is particularly well-demonstrated with respect to the Elder Abuse claim Plaintiffs allege. A defendant's "care or custody" of an elder is a necessary element of an elder abuse claim. In *Winn v. Pioneer Medical Group, Inc.,* 63 Cal.4th 148 (2016), the California Supreme Court held that the "Elder Abuse Act requires a caretaking or custodial relationship—where a person has assumed significant responsibility for attending to one or more of those basic needs of the elder or dependent adult that an able-bodied and fully competent adult would ordinarily be capable of managing without assistance." Id. at 155.

Here, not a single fact is pled to support an allegation that Defendants Caravan Operations Corp., Matthew Karp or Benjamin Karp had the requisite robust caretaking or custodial relationship with Decedent described in *Winn*. The FAC

merely alleges, based on information and belief, that Defendants Caravan Operations Corp., Matthew Karp and Benjamin Karp are the "sole owners of Caravan and Glenhaven" and are "in a joint venture." FAC, ¶¶ 14, 16.

Federal Rules of Civil Procedure, Rule 9(b) does not allow a plaintiff "to merely lump multiple defendants together" and instead "require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 764-765 (9th Cir. 2007); *Cisneros v. Instant Cap. Funding Group, Inc.*, 263 F.R.D. 595, 605, 606 (E.D. Cal. 2009) (grouping fails to "'provide each and every defendant with enough information to enable them to know what misrepresentations are attributable to them,'" and "to distinguish the multiple defendants' roles in the alleged fraud"). Rule 8 imposes similar requirements. See *McHenry v. Renne*, 84 F.3d 1172, 1177 (9th Cir. 1996) (holding that Rule 8 requires plainly stating "which defendant is liable to the plaintiff for which wrong"). The FAC violates these rules, and does not provide fair notice of the basis for Plaintiffs' claims; the failure can constitute grounds for dismissal in the first instance. See *McHenry*, at 1178-80 (affirming dismissals of complaints that fail to state which defendants are liable to plaintiff for which wrongs). Grouping defendants in a pleading and failing to distinguish their respective conduct "makes it exceedingly difficult, if not impossible, for individual [d]efendants to respond to [plaintiffs'] allegations. *In re iPhone Application Litig.*, 2011 U.S. Dist. LEXIS 106865, *26-27 (2011). In any complaint, plaintiffs must identify what action each defendant took that caused plaintiffs' harm without resort to generalized allegations against the defendants as a whole. Id. at *27. The Elder Abuse claim against Defendants Caravan Operations Corp., Matthew Karp and Benjamin Karp should, therefore, be dismissed.

## VII. THE CUSTODIAL NEGLIGENCE AND WRONGFUL DEATH CLAIMS ARE INSUFFICIENT.

Under the third cause of action entitled "Custodial Negligence," the FAC alleges Defendants breached a duty of care by failing to implement policies, procedures and safety measures to prevent exposure to the coronavirus. FAC, ¶ 58. The FAC separately alleges a fourth cause of action for wrongful death based on the same allegations as the previous three causes of action. FAC, ¶¶ 60-61. As shown above, the third cause of action for "Custodial Negligence" and the fourth cause of action for wrongful death must be dismissed because the PREP Act provides immunity from liability for the acts of neglect or negligence in the use of PPE, testing and other safety measures alleged in the FAC.

In addition, even if immunity did not bar the custodial negligence or wrongful death claims, the FAC fails to state facts sufficient to support those claims. No additional facts are pled in these two claims and as demonstrated above, the facts which are incorporated by reference in these two causes of action are insufficient to state a claim.

No facts are alleged to support an applicable standard of care or the breach of a duty of care. The negligence cause of action vaguely alleges a breach of the duty of care occurred when Defendants failed to "implement policies, procedures, and safety measures" to protect against the coronavirus. FAC, ¶ 58.[6] Further, at most, the FAC alleges the *conclusion* that Decedent's death was the result of Glenhaven's "actions and omissions." FAC, ¶ 35. But, there are no factual allegations that demonstrate the necessary causal connection between Glenhaven's conduct and Decedent contracting and dying from COVID-19. No facts are alleged as to the

---

[6]     As noted earlier, the State of California waived many of the state regulations applicable to skilled nursing facilities during the pandemic. See, infra at n. 3.

manner or source of Decedents' infection with the virus. No facts are even alleged that any employee who was not provided PPE was infected with the virus, or that such an employee interacted directly with Decedent and that was how Decedent contracted COVID-19.  There are no factual allegations of any scientific or medical evidence linking the transmittal method of COVID-19 to the presence or absence of any preventive measures such that the alleged willful misconduct and alleged injuries sustained by Decedent were preventable by Defendants. All that is left is mere speculation or surmise about how the virus was transmitted to Decedent, which is not sufficient to support a claim for negligence or wrongful death.

## VIII.  THE ALLEGATIONS AND PRAYER FOR PUNITIVE DAMAGES SHOULD BE STRICKEN.

Pursuant to Federal Rule of Civil Procedure 12(f) a court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983).

The prayer for punitive damages with respect to the first and second causes of action is procedurally improper under California law at this juncture. (Cal. Code Civ. Proc., §425.13.)  Further, as shown in Section VI above, the FAC does not contain sufficient factual allegations to demonstrate recklessness, oppression, fraud or malice as those terms are defined in California Civil Code section 3294(c). *Grieves v. Superior Court,* 157 Cal.App.3d 159, 166 (1984). The FAC contains conclusionary and boilerplate allegations that Defendants' conduct was "despicable conduct carried on by the Defendants with a willful and conscious disregard of the rights of Plaintiffs, or subjected Plaintiffs to cruel and unjust hardship in conscious disregard of Plaintiffs' rights, or was an intentional misrepresentation, deceit, or concealment of a material fact known . . . such as to constitute malice, oppression or

fraud under California Civil Code section 3294. . . ." FAC, 44, 53. Boilerplate allegations without any facts to support them are insufficient. *Timperley v. Chase Collection Service* (1969) 272 Cal.App.2d 697, 701 [bare allegations of willful, deliberate, or malicious conduct, "without a recitation of facts tending to show such malice, is merely conclusory and thus is insufficient to support the complaint."].

Plaintiffs' unsupported and conclusory claims of malice, oppression, concealment or conscious disregard fail to meet the requisite factual requirement to support a claim for punitive damages. As such, the complaint's allegations regarding punitive damages and the prayer for punitive damages should be stricken.

Defendants move to strike the following language:

1. Paragraph 44 in its entirety;

2. Paragraphs 52-54 in their entirety;

3. That portion of the Prayer as to the First Cause of Action, item number 2, "For punitive damages";

4. That portion of the Prayer as to the Second Cause of action, item number 7, "For punitive damages."

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

# IX.    CONCLUSION

Pursuant to Federal Rules of Civil Procedure, rules 12(b)(6) and 12(f), Defendants GLENHAVEN HEALTHCARE LLC, CARAVAN OPERATIONS CORP., MATTHEW KARP, and BENJAMIN KARP request this Court order dismissal of the First Amended Complaint and/or strike the allegations regarding punitive damages from the First Amended Complaint.

DATED: July 30, 2020                    LEWIS BRISBOIS BISGAARD & SMITH LLP


                                        */s/* Lynnette A. Christopoulos
                                   By:  _____
                                        Kathleen M. Walker
                                        Lynnette A.Christopoulos
                                        Attorneys for Defendants GLENHAVEN
                                        HEALTHCARE LLC; CARAVAN
                                        OPERATIONS CORP.; MATTHEW
                                        KARP, an individual; and BENJAMIN
                                        KARP, an individual

**FEDERAL COURT PROOF OF SERVICE**

Jackie Saldana v. Glenhaven Healthcare LLC, et al.
Federal Case No. 2:20-cv-05631-FMO-MAA

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

At the time of service, I was over 18 years of age and not a party to the action.  My business address is 633 West 5th Street, Suite 4000, Los Angeles, CA 90071.  I am employed in the office of a member of the bar of this Court at whose direction the service was made.

On July 31, 2020, I served the following document(s):  NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE RULE 12(b)(6), 12(e) and 12(f) ; MEMORANDUM OF POINTS AND AUTHORITIES

I served the documents on the following persons at the following addresses (including fax numbers and e-mail addresses, if applicable):

Scott C. Glovsky, Esq.
Roberta Liao, Esq.
Al Heath, Esq.
LAW OFFICES OF SCOTT GLOVSKY, APC
343 Harvard Avenue
Claremont, CA 91711
Tel. No.: (626) 243-5598
Fax. No.: (866) 243-2243
Email: sglovsky@scottglovskylaw.com;
rliao@scottglovskylaw.com;
aheath@scottglovskylaw.com

The documents were served by the following means:

☒   (BY COURT'S CM/ECF SYSTEM)  Pursuant to Local Rule, I electronically filed the documents with the Clerk of the Court using the CM/ECF system, which sent notification of that filing to the persons listed above.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on July 31, 2020, at Los Angeles, California.

*Debbie Stephenson*
Debbie Stephenson

1

DEFENDANTS' MOTION TO DISMISS FAC