1 **LEWIS BRISBOIS BISGAARD & SMITH LLP**
KATHLEEN M. WALKER, SB # 156128
2    E-Mail: Kathleen.Walker@lewisbrisbois.com
LYNNETTE A. CHRISTOPOULOS, SB # 192123
3    E-Mail: Lynnette.Christopoulos@lewisbrisbois.com
633 West 5th Street, Suite 4000
4 Los Angeles, California 90071
Telephone: 213.250.1800
5 Facsimile: 213.250.7900

6 Attorneys for Defendants, GLENHAVEN
HEALTHCARE LLC; CARAVAN
7 OPERATIONS CORP.; MATTHEW
KARP and
8 BENJAMIN KARP

9 UNITED STATES DISTRICT COURT

10 CENTRAL DISTRICT OF CALIFORNIA

11 WESTERN DIVISION

| | |
|---|---|
| 12 JACKIE SALDANA, CELIA SALDANA, RICARDO SALDANA JR., and MARIA SALDANA, as individuals and as successors and heirs of RICARDO SALDANA, deceased,<br><br>Plaintiffs,<br><br>vs.<br><br>GLENHAVEN HEALTHCARE LLC, a California corporation; CARAVAN OPERATIONS CORP., a California corporation; MATTHEW KARP, an individual; BENJAMIN KARP, an individual, and DOES 1 through 100, inclusive,<br><br>Defendants. | CASE NO. 2:20-cv-05631 FMO-MAAx<br><br>**DEFENDANTS GLENHAVEN HEALTHCARE LLC'S; CARAVAN OPERATIONS CORP'S.; MATTHEW KARP'S and BENJAMIN KARP'S OPPOSITION TO MOTION TO REMAND**<br><br>[Filed concurrently with Declaration of Lynnette Christopoulos; Evidentiary Objections to Declaration of Scott Glovsky]<br><br>**DATE:     August 27, 2020**<br>**TIME:      10:00 a.m.**<br>**COURTROOM: 6D**<br><br>The Hon. Fernando M. Olguin<br><br>Trial Date:     None Set |

26    Defendants    GLENHAVEN    HEALTHCARE    LLC,    CARAVAN

27 OPERATIONS CORP., MATTHEW KARP AND BENJAMIN KARP (collectively

28 "Defendants") submit the following opposition to Plaintiffs' Motion to Remand.

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION.................................................................................................... 1

II.     FACTUAL AND PROCEDURAL BACKGROUND .......................................... 2

III.    THIS COURT HAS SUBJECT MATTER JURISDICTION OVER THIS
        ACTION. ................................................................................................................. 4

        A.      Federal Question Jurisdiction Exists .................................................... 4

        B.      The PREP Act Applies and Completely Preempts Plaintiffs' Claims. ..................... 9

                1.      *The PREP Act Applies to More than Just Vaccines.* .................................... 9

                2.      *The PREP Act Completely Preempts Plaintiffs' Claims.* ............................ 12

        C.      Federal Officer Jurisdiction Exists ..................................................... 16

        D.      Plaintiffs Should Not Be Awarded Costs Based on Defendants' Good Faith
                Removal of this Action ........................................................................ 23

IV.     CONCLUSION .................................................................................................... 24

DEFENDANTS GLENHAVEN HEALTHCARE LLC'S; CARAVAN OPERATIONS CORP'S.; MATTHEW
KARP'S and BENJAMIN KARP'S OPPOSITION TO MOTION TO REMAND

# <u>TABLE OF AUTHORITIES</u>

<u>Federal Cases</u>

*Aetna Health Inc. v. Davila,*
     542 U.S. 200 (2004) ........................................................................... 14

*Beneficial Nat. Bank v. Anderson,*
     539 U.S. 1 (2003) ............................................................................... 14

*Chamber of Commerce of United States v. Whiting,*
     563 U.S. 582 (2011) ............................................................................. 8

*Daleske v. Fairfield Communities,*
     17 F.3d 321, 325 (10th Cir. 1994) ..................................................... 23

*Dawson v. Ciba-Geigy Corp, USA,*
     145 F. Supp. 2d 565 (D.N.J. 2001) ................................................... 13

*Defender Ass'n,*
     790 F.3d 457, 468 (2015) ................................................................... 17

*El Paso Natural Gas Co. v. Netztsosie,*
     528 U.S. 472 (1999) ........................................................................... 14

*Franchise Tax Board v. Construction Laborers Vacation Trust,*
     463 U.S. 1 (1983) ............................................................................... 13

*Fung v. Abex Corp.,*
     816 F. Supp. 569 (N. D. Cal. 1992) ................................................... 21

*Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.,*
     545 U.S. 308 ......................................................................................... 4

*Health Dept.*
     102 A.D.3d 140 (N.Y. App. Div. 2012) .............................................. 7

*Hornbuckle v. State Farm Lloyds,*
     385 F.3d 538, 541 (2004) ................................................................... 23

*In re Commonwealth's Motion to Appoint Counsel Against or Directed to*
     *Defense Association of Phila.,*
     790 F.3d 457 (3d Cir. 2015) ....................................................... 16, 22

*Jefferson County v. Acker,*
     527 U.S. 423, 119 S. Ct. 2069, 144 L. Ed. 2d 408 (1999) ............... 22

*Jones v. Rath Packing Co.,*
     430 U.S. 519 (1977) ............................................................................. 8

*Kehler v. Hood,*
     2012 U.S.Dist. LEXIS 74502 .......................................................... 7, 15

4826-8582-3687.1

ii

DEFENDANTS GLENHAVEN HEALTHCARE LLC'S; CARAVAN OPERATIONS CORP'S.; MATTHEW
KARP'S and BENJAMIN KARP'S OPPOSITION TO MOTION TO REMAND

*Liberty Mut. Ins. Co. v. Ward Trucking Corp.,*
    48 F.3d 742, 745 (3d Cir. 1995) ........................................................... 4

*Martin v. Franklin Capital Corp.,*
    546 U.S. 132, 141 (2005) ...................................................................... 23

*Merrell Dow Pharmaceuticals, Inc. v. Thompson,*
    478 U.S. 804 (1986) ......................................................................... 4, 13

*Metropolitan Life Ins. Co. v. Taylor,*
    481 U.S. 58, 63-65. (1987) .................................................................. 13

*Papp v. Fore-Kast Sales Co.,*
    842 F.3d 805 (3d Cir. 2016) ................................................................ 17

*Parker v. St. Lawrence County Public Health Department,*
    102 A.D.3d 140 (N.Y. App. Div. 2012) ............................................. 8, 9

*Railway Labor Executives Association v. Pittsburgh & Lake Erie Railroad Co.,*
    858 F.2d 936 (3d Cir. 1988) ................................................................ 13

*Riegel v. Medtronic, Inc.,*
    552 U.S. at 324 (2008) .......................................................................... 9

*Ruppel v. CBS Corp.,*
    701 F.3d 1176 (7th Cir. 2012) ............................................................. 17

*Shaw v. Delta Air Lines, Inc.,*
    463 U.S. 85 (1983) ................................................................................. 8

*Smith v. Indus. Valley Title Insurance Co.,*
    957 F.2d 90 (3d Cir. 1992) ................................................................ 4, 5

*Sun Buick, Inc. v. Saab Cars USA, Inc.,*
    26 F.3d 1259 (3d Cir. 1994) ................................................................ 16

*Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.,*
    463 U.S. 1, 8 (1983) .............................................................................. 4

*U.S. Express Lines, Ltd. v. Higgins,*
    281 F.3d 383, 389 (3d Cir. 2002) .......................................................... 4

*Valdes v. Wal-Mart Stores, Inc.,*
    199 F.3d 290, 293 (5th Cir. 2000) ....................................................... 23

*Watson v. Philip Morris Cos., Inc.,*
    551 U.S. 142 (2007) ............................................................................ 17

*Willingham v. Morgan,*
    395 U.S. 402 (1969) ............................................................................ 22

*Winters v. Diamond Shamrock Chemical Co.,*
    149 F.3d 387 (5th Cir. 1998) .............................................................. 17

DEFENDANTS GLENHAVEN HEALTHCARE LLC'S; CARAVAN OPERATIONS CORP'S.; MATTHEW
KARP'S and BENJAMIN KARP'S OPPOSITION TO MOTION TO REMAND

<u>Statutes/Regulations</u>

28 U.S.C. §1331 ............................................................................................................ 4

28 U.S.C. § 1441(a) ...................................................................................................... 4

28 U.S.C. § 1442(a)(1) ............................................................................................... 16

28 U.S.C. § 1441(b) ...................................................................................................... 4

28 U.S.C. § 1447(c) .................................................................................................... 23

42 C.F.R § 483 ............................................................................................................ 19

42 U.S.C § 1396r ........................................................................................................ 19

42 U.S.C. § 1395i-3 .................................................................................................... 19

42 U.S.C. § 247d-6d ............................................................................................. passim

42 U.S.C. § 247d-6d [b] [8] ......................................................................................... 6

42 U.S.C. § 247d-6d [b][8] ........................................................................................... 7

42 U.S.C. § 247d-6d[a] ................................................................................................. 6

42 U.S.C. § 247d-6e ................................................................................................... 10

42 U.S.C. 247d-6d(a)(1) ............................................................................................. 15

42 USC § 247d-6d[b ................................................................................................ 8, 9

4826-8582-3687.1

iv

DEFENDANTS GLENHAVEN HEALTHCARE LLC'S; CARAVAN OPERATIONS CORP'S.; MATTHEW
KARP'S and BENJAMIN KARP'S OPPOSITION TO MOTION TO REMAND

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.     INTRODUCTION

In this action, Plaintiffs seek to hold Defendants liable for the manner in which they used, administered and distributed federally approved countermeasures during the early stages of the global  pandemic caused by a new virus not given an official name until February 11, 2020—at a time when only 13 cases and no deaths had occurred in the United States.[1] In response, the federal government, through the Secretary of the Department of Health and Human Services (HHS), has issued three declarations, each one expanding the application of the PREP Act beyond just vaccines or anti-viral programs, to the use, distribution, allocation and application of personal protective equipment (PPE), testing, and other countermeasures. Defendants maintain that their administration, distribution and use of countermeasures in the skilled nursing facility setting that is the basis for Plaintiffs' claims is governed by and immunized from liability under the PREP Act, 42 U.S.C. § 247d-6d, thus giving rise to jurisdiction in this Court.

Plaintiffs allege that Defendants' affirmative conduct—both in the physical provision of PPE and in the decision-making process about the use of PPE and other countermeasures—was negligent and inadequate. Contrary to Plaintiffs' contentions that the PREP Act addresses only physical actions, Plaintiffs' allegations are not just about Defendants' inaction, but are about their affirmative conduct in allocating, using, administering and distributing PPE and other countermeasures to prevent the spread of COVID-19 to decedent Ricardo Saldana, which are immunized from liability under the PREP Act. Nonetheless, the PREP Act is to be interpreted broadly

---

[1]   The World Health Organization named the virus "severe acute respiratory syndrome conronavirus 2" (SARS-CoV-2), and the disease it causes "coronavirus disease" (COVID-19) on February 11, 2020. See World Health Organization Situation Report-22, found at who.int/docs/default-source/coronaviruse/situation-reports/20200211-sitrep-22-ncov.pdf?sfvrsn=fb6d49b1_2.

1  and consistently with the goal of encouraging conduct to fight against the
2  coronavirus during a public health crisis by immunizing those who make difficult
3  decisions in uncharted territory regarding the spread of a novel virus. Plaintiffs offer
4  nothing but their own interpretation—narrow and rigid at best—to support their
5  contention the PREP Act does not apply.

6       Jurisdiction in federal court is proper based on the President of the United
7  States' declaration of the state of national emergency in response to the global
8  COVID-19 pandemic on March 13, 2020, the Secretary of the Department of Health
9  & Human Services' ("HHS") March 10, 2020 and subsequent declarations, and
10 regulations promulgated by CMS and CDC. These events triggered application of
11 the PREP Act, which expressly preempts state law and confers jurisdiction solely in
12 the federal courts.

13      Federal officer jurisdiction over the claims alleged in this case is also
14 triggered by the conversion of health care workers and facilities into agents of the
15 federal government acting to help to achieve its goals of curbing the spread of the
16 nation's COVID-19 pandemic. The federal courts are better suited to deciding the
17 questions whether federal law preempts state law, whether PREP Act immunity
18 applies to Defendants and whether other federal laws and regulations apply. Based
19 on any of these separate grounds to confer jurisdiction, Plaintiffs' remand motion
20 must be denied as must be their request for an award of attorney fees.

21 II.   **FACTUAL AND PROCEDURAL BACKGROUND**

22      Plaintiffs filed a complaint in Los Angeles Superior Court against Defendants
23 (the "State Court action"). Dkt. #3, Ex. 1. The complaint was amended once. Dkt.
24 #3, Ex. 7.  The allegations of the First Amended Complaint arise exclusively from
25 the outbreak of the COVID-19 pandemic and Defendants' alleged negligence in the
26 manner in which they allocated, distributed and administered countermeasures in
27 response to the spread of the coronavirus in rendering care and treatment to
28 decedent Ricardo Saldana, a resident of Glenhaven Healthcare LLC's facility.

1   　　　The First Amended Complaint alleges Defendants did not allow employees to

2   wear masks until April 1, 2020, that Defendants supplied masks and gowns to their

3   employees starting April 1, 2020, that Defendants did not have enough masks and

4   gowns, did not start testing staff and patients until April 7 through 9, 2020, and

5   failed to take precautions to identify and isolate employees or residents infected with

6   or exposed to the coronavirus. Dkt, #3, Ex. 7,  ¶¶ 2, 31-34, 47, 49.

7   　　　Plaintiffs allege Glenhaven did not properly distribute masks to staff. Dkt. #3,

8   Ex. 7, ¶¶ 2, 27. The First Amended Complaint specifically alleges "Glenhaven

9   began to provide first paper masks and then other items such as disposable gowns,"

10   and "had begun to implement some safety measures in early April, . . ." *Id.* at ¶¶ 32-

11   33. But, Plaintiffs criticize as ineffective, the "steps it [Glenhaven] took to address

12   the spread." Plaintiffs further allege Decedent was exposed to the coronavirus by

13   Glenhaven employees  providing basic custodial care such as feeding and bathing

14   who were not in "appropriate protective equipment." *Id.* at ¶ 40. Glenhaven is

15   alleged to have not provided "adequate PPE," and not to have adequately tested

16   residents and staff. *Id.* at ¶ 49. In addition, Plaintiffs allege Defendants violated

17   various federal and state laws and regulations governing nursing homes in

18   California, citing specific sections of Title 42 of the Code of Federal Regulation. *Id.*

19   at ¶ 51.

20   　　　The gravamen of the First Amended Complaint concerns Glenhaven's

21   allocation, distribution, administration and use of personal protective equipment,

22   testing and implementation of appropriate protocols and procedures to prevent the

23   spread of the novel coronavirus COVID-19 during a state of national emergency. As

24   such, federal jurisdiction over Plaintiffs' claims pursuant to the PREP Act is

25   properly maintained. Thus, Defendants timely filed notice of removal of this action

26   filed on June 25, 2020, is proper and the motion to remand must be denied.

27   ///

28

4826-8582-3687.1

3

DEFENDANTS GLENHAVEN HEALTHCARE LLC'S; CARAVAN OPERATIONS CORP'S.; MATTHEW
KARP'S and BENJAMIN KARP'S OPPOSITION TO MOTION TO REMAND

## III.   THIS COURT HAS SUBJECT MATTER JURISDICTION OVER THIS ACTION.

### A.   Federal Question Jurisdiction Exists

Pursuant to 28 U.S.C. § 1441(a), "[e]xcept as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." *Liberty Mut. Ins. Co. v. Ward Trucking Corp.,* 48 F.3d 742, 745 (3d Cir. 1995) (quoting 28 U.S.C. § 1441(a)). In cases involving non-diverse parties, "removal is appropriate only if the case falls within the district court's original 'federal question' jurisdiction: 'all civil actions arising under the Constitution, laws, or treaties of the United States.'" *U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 389 (3d Cir. 2002) (citing 28 U.S.C. §§ 1331, 1441(b*); Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.,* 463 U.S. 1, 8 (1983)).

While the content of the plaintiff's "well-pleaded complaint" typically determines whether an action arises under federal law, the absence of an express federal claim is not necessarily fatal to federal "arising under" jurisdiction. *U.S. Express Lines*, 281 F.3d at 389 (citing *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986)) A significant line of precedent sustains federal question jurisdiction over state law claims that present a substantial, embedded question of federal law. *See, e.g., Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 807-08, (1986); *Smith v. Indus. Valley Title Ins. Co.,* 957 F.2d 90, 92-93 (3d Cir. 1992), cert. denied, 505 U.S. 1221, (1992). The standard for establishing jurisdiction under such circumstances was discussed at length in *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.,* 545 U.S. 308 (*Grable*).

In *Grable*, the Supreme Court set forth a two-step process for determining whether a state law claim "arises under" federal law. First, the state law claim must

1   necessarily raise a stated federal issue, actually disputed and substantial." Second,

2   federal courts must be able to entertain the state law claims "without disturbing a

3   congressionally approved balance of state and federal judicial responsibilities." *Id.*

4   Defendants have satisfied both prongs established by the Supreme Court under

5   *Grable*.

6       Plaintiffs have filed a claim for damages related to Defendants' wrongdoing

7   with respect to their response to the *ongoing* COVID-19 global pandemic, and a

8   plain reading of the First Amended Complaint demonstrates that Plaintiffs are

9   raising issues with respect the procurement, use, allocation, distribution, and

10  administration of Personal Protective Equipment ("PPE") and other

11  countermeasures. These allegations by their nature invoke a substantial federal

12  question as whether the broad immunities afforded under the PREP Act apply to the

13  conduct of Defendants in this action. Ultimately, as a matter law, the application of

14  the PREP Act raises a substantial federal question. By Plaintiffs' own admission,

15  this issue is disputed and substantial.  What is clear is any allegation of negligence

16  arising out of the response to COVID-19 is inextricably intertwined with and

17  invokes the Declaration issued for COVID-19 and the PREP Act.

18      Despite Plaintiffs' self-serving narrow characterization of the issues described

19  in Plaintiffs' motion to remand, the federal court has a substantial interest in

20  determining the application of the PREP Act to the present matter. The PREP Act,

21  by its nature, is intended to apply broad and sweeping immunity to individuals and

22  entities directly fighting pandemic and disease during times of a declared state of

23  emergency. The unique character of the virus, the present lack of vaccine, treatment,

24  or scientific consensus as well as its high communicability required the Secretary of

25  Health and Human Services to set forth an expansive declaration covering a  number

26  of persons and measures, all of which potentially require significant interpretation

27  with respect to application and scope.

28      There is a national interest in providing a federal forum for determination of

4826-8582-3687.1

5

DEFENDANTS GLENHAVEN HEALTHCARE LLC'S; CARAVAN OPERATIONS CORP'S.; MATTHEW
KARP'S and BENJAMIN KARP'S OPPOSITION TO MOTION TO REMAND

1 the issues relating to a national pandemic and the federal response in the form of

2 legislation, rules and regulations. There can be no doubt that there is a substantial

3 and compelling interest in having these issues interpreted at the federal level.

4 Moreover, the federal court is uniquely positioned to interpret Congressional intent

5 and the interests of the federal government. In deciding these issues, the Court

6 would not "disturb any congressionally approved balance of federal and state

7 judicial responsibilities" retaining jurisdiction in this matter, thus satisfying the

8 second *Grable* federal question prong. The issues underlying this matter with

9 respect to the application of immunity and preemption under the PREP Act are not

10 those that Congress intended to be decided at the state court level. As such, this

11 Court would not be disturbing or otherwise infringing on any balance of state and

12 federal interest by retaining jurisdiction. To the contrary, the plain language of the

13 statute seeks to assert broad federal authority over the issues arising from the Act,

14 and seeks to all but eliminate any semblance of state court control. 42 U.S.C. §

15 247d-6d (b) (8).

16     Plaintiffs incorrectly argue that Defendants are asserting the PREP Act as an

17 affirmative defense to Plaintiffs' claims and that is not sufficient to establish federal

18 question jurisdiction. Dkt.# 11 at 14. Not so. Rather, the PREP Act occupies the

19 entire field involving cases alleging the use of covered countermeasures during a

20 pandemic and is much more than an affirmative defense. The PREP Act not only

21 provides immunity, but it provides a comprehensive compensation system, much

22 like the workers compensation system and the National Vaccine Compensation

23 Program, and specifies a particular court to hear a narrowly defined exception to the

24 immunity provisions. The PREP Act was enacted for the specific purpose of serving

25 "in place of expensive and uncertain litigation."[2] See 42 U.S.C. § 247d-6d(a). The

_____

27 [2]  Dep't of Health & Human Services, Office of the Secretary, General Counsel

28 "Advisory Opinion on the Public Readiness and Emergency Preparedness Act and
(footnote continued)

4826-8582-3687.1

6

PREP Act, on its face, states the intention to remove all jurisdiction to hear any cases other than under its terms. The PREP Act expresses its clear intention to supersede or preempt state control of the issues raised by these Defendants by explicitly providing:

> "no State . . . may establish, enforce, or continue in effect with respect to a covered countermeasure any provision of law or legal requirement that . . . (A) is different from, or is in conflict with, any requirement applicable under this section; and (B) relates to the . . . use, . . . dispensing, or administration by qualified persons of the covered countermeasure"

42 U.S.C. § 247d-6d [b][8].

The unpublished *Kehler v. Hood* case cited by Plaintiffs offers no support for their argument that the PREP Act is merely an affirmative defense that does not give rise to federal question jurisdiction. Just the opposite is true; the *Kehler* case supports *Defendants'* position. In *Kehler v. Hood,* 2012 U.S.Dist. LEXIS 74502, *8, the court dismissed negligence claims against Novartis, a vaccine manufacturer, for lack of jurisdiction because the PREP Act provides absolute immunity, and further, the District Court for the District of Columbia has exclusive jurisdiction over any claim of willful misconduct, had one been asserted. *Id.* at *8. Thus, the plaintiffs had no choice but to concede that any claims against defendant Novartis were barred under the PREP Act. *Id.* at *3-4.

Inexplicably, Plaintiffs also dismiss as "inapposite and irrelevant" the case of *Parker v. St. Lawrence County Pub. Health Dept.* 102 A.D.3d 140 (N.Y. App. Div. 2012), because it is a state court case and does not discuss federal jurisdiction. Dkt.# 11 at 15. The *Parker* case is highly relevant and instructive on the jurisdictional

---

the March 10, 2020 Declaration Under the Act April 17, 2020, as Modified on May 19, 2020 (May 19, 2020) (available at https://www.hhs.gov/sites/default/files/prep-act-advisory-opinion-hhs-ogc.pdf).

4826-8582-3687.1

7

DEFENDANTS GLENHAVEN HEALTHCARE LLC'S; CARAVAN OPERATIONS CORP'S.; MATTHEW KARP'S and BENJAMIN KARP'S OPPOSITION TO MOTION TO REMAND

1   issue raised by Plaintiffs' motion to remand.

2       In *Parker,* the court applied preemption under the PREP Act to hold that a
3   state-court action may not be maintained. The plaintiff in *Parker* filed suit in New
4   York state court alleging negligence and battery arising from the administration of
5   the H1N1 influenza vaccine to a public school student without consent. The
6   defendant moved to dismiss the complaint citing lack of subject matter jurisdiction
7   based on federal preemption.. The Appellate Court reversed the trial court's denial
8   of defendant's motion finding that the "sole issue" was whether the "PREP Act
9   preempts plaintiff's state law claims for negligence and battery." *Id.* at 141.  The
10  appellate court held that it did. *Id.* at 142.

11      In doing so, the Court stated that in "determining whether federal law
12  preempts a state law cause of action, the determinative inquiry is 'Congress' intent
13  in enacting the federal statute at issue.'" *Id*. quoting *Shaw v. Delta Air Lines, Inc.*,
14  463 U.S. 85, 95 (1983). The Court noted federal preemption "may be either
15  expressed or implied, and "is compelled whether Congress' command is explicitly
16  stated in the statute's language or implicitly contained in its structure and purpose."
17  *Id.* (quoting *Jones v. Rath Packing Co.,* 430 U.S. 519, 525 (1977). The Court in
18  *Parker* then correctly concluded that the PREP Act contained an "express
19  preemption clause" and that this plain reading "contains the best evidence of
20  Congress' preemptive intent." *Id*. (quoting *Chamber of Commerce of U.S. v.
21  Whiting,* 563 U.S. 582, 591 (2011).

22      Analyzing the plain language of the statute, the *Parker* court confirmed
23  Congressional intent regarding the preemption clause finding that the clear language
24  that "no State…may establish, enforce, or continue in effect with respect to a
25  covered countermeasure any provision of law or legal requirement that…(A) is
26  different from, or is in conflict with, any requirement applicable under this section;
27  and (B) relates to the . . . use, . . . dispensing, or administration by qualified persons
28  of the covered countermeasure" (42 USC § 247d-6d(b)).  *Id.* Furthermore, the Court

DEFENDANTS GLENHAVEN HEALTHCARE LLC'S; CARAVAN OPERATIONS CORP'S.; MATTHEW
KARP'S and BENJAMIN KARP'S OPPOSITION TO MOTION TO REMAND

1   determined that "[s]ince State regulations can be as effectively exerted through an
2   award of damages as through some form of preventive relief, State common-law tort
3   claims may be preempted along with State statutes and regulations" *Id.* at 143
4   (citing *Riegel v. Medtronic, Inc.,* 552 U.S. at 324 (2008)). Finally, the Court
5   concluded "Congress intended to preempt all state law tort claims arising from the
6   administration of covered countermeasure by a qualified person pursuant to the
7   declaration by the Secretary," and noted that it extended beyond mere administration
8   to include allegations which extend to questions of consent. *Id.*

9       *Parker* makes clear not only that the PREP Act statute clearly intended a
10  federal forum to serve as the exclusive forum when adjudicating claims arising
11  under the Act, but further that state courts have no subject matter jurisdiction to hear
12  any claims arising out of or concerning a declaration issued pursuant to the PREP
13  Act at any level. It would therefore be inappropriate to remand the present matter to
14  state court because the applicable COVID declaration here is even broader than in
15  *Parker* and the claims here fall under that declaration. Congress has clearly set forth
16  the exclusive avenues for civil enforcement both within the jurisdiction of the
17  federal court system and through the CICP program.

18      Given that significant federal questions regarding application of the PREP
19  Act are raised in Plaintiffs' complaint, remand should be denied and those questions
20  decided by this Court.

21  **B.     The PREP Act Applies and Completely Preempts Plaintiffs'**
22  **Claims.**

23          ***1.     The PREP Act Applies to More than Just Vaccines.***

24      Plaintiffs boldly contend the PREP Act only applies to claims related to
25  vaccine administration and use, citing a 2012 law review article. Dkt.# 11 at 16. The
26  recent actions of the federal government in issuing declarations under the PREP Act
27  and other legislation in response to the COVID-19 pandemic show the absurdity of
28  such a contention and establish that the issues raised by Plaintiffs' lawsuit are

1  completely preempted by the PREP Act.

2      Before the COVID-19 pandemic swept across the United States, The PREP

3  Act narrowly defined "covered countermeasure" as "[t]he manufacture, testing,

4  development, distribution, dispensing, and…the administration and usage of the

5  pandemic countermeasures A H5N1, H2, H6, H7, H9, and 2009 H1N1 **vaccines** and

6  any associated adjuvants. Fed. Reg. 74, 30294 (June 25, 2009).

7      In contrast, on March 17, 2020, the Secretary of Health and Human Services

8  issued a Declaration under the PREP Act, effective February 4, 2020, placing into

9  effect a broad immunity for the use of a range of medical products used in the fight

10  against COVID-19. *See* Fed. Reg. 15, 198, 15, 202 (March 17, 2020); *see also* Pub.

11  L. No. 109-148, Public Health Service Act § 319F-3, 42 U.S.C § 247d-6d and 42

12  U.S.C. § 247d-6e. The HHS March 17, 2020 declaration created expanded

13  categories of broadly defined "covered countermeasures" eligible for immunity

14  under the PREP Act as:

15      Covered Countermeasures are any antiviral, any other drug, any biologic, any

16  diagnostic, *any other device*, or any vaccine, used to treat, diagnose, cure, *prevent,*

17  *or mitigate* COVID-19, *or the transmission of* SARS-CoV-2 or a virus mutating

18  therefrom, or any device used in the administration of any such product, and all

19  components and constituent materials of any such product. (Italics added.)

20      Covered Countermeasures must be "qualified pandemic or epidemic

21  products," or "security countermeasures," or drugs, biological products, or devices

22  authorized for investigational or emergency use, as those terms are defined in the

23  PREP Act, the FD&C Act, and the Public Health Service Act. 85 FR 15198.

24  Further, a qualified pandemic or epidemic product is one that is "manufactured,

25  used, designed, developed, modified, licensed, or procured" to "diagnose, *mitigate,*

26  *prevent*, treat, or cure a pandemic or epidemic, or "to limit the harm such pandemic

27  or epidemic might otherwise cause." 42 U.S.C. 247d-6d(i)(7), italics added.

28      In response to the Coronavirus Aid, Relief, and Economic Security (CARES)

Act § 3103, Pub. L. No. 116-136 (March 27, 2020), the PREP Act COVID-19 declaration was amended to **add respiratory protective devices** to the list of covered countermeasures so long as they are NIOSH approved and determined by the Secretary to be a priority for use during a public health emergency declared by the Secretary under section 319 of the Public Health Service Act.5 See 42 U.S.C. § § 247d, 247d-6d(i)(1)(D).

A "covered person" is also broadly defined, as relevant here, as a person or entity that is a distributor, program planner, or qualified person who prescribed, administered, or dispensed such countermeasure, or an official, agent or employee of such a person or entity. 42 U.S.C. 247d-6d(i)(2),(5). A "program planner" means a person who supervised or administered a program with respect to the administration, dispensing, distribution, provision, or use of a security countermeasure or a qualified pandemic or epidemic product, or provides a facility to administer or use a covered countermeasure. 42 U.S.C. 247d-6d(i)(6).

In addition, the HSS Office of the Secretary, General Counsel's "Advisory Opinion on the Public Readiness and Emergency Preparedness Act and the March 10, 2020 Declaration Under the Act April 17, 2020, as Modified on May 19, 2020 (May 19, 2020)" notes that the number of products which qualify as "covered countermeasures" are "too numerous to list" and even noted that "Congress did not intend to impose a **strict-liability standard** on covered persons for determining whether a product is a covered countermeasure."[3] Instead, it was noted that immunity would *still* apply to products *not* covered as countermeasures so long as one "reasonably could have believed" that the product was a covered countermeasure.   To that end, the FDA has issued EUA's for a comprehensive amount of PPE products including face shields, other barriers, and respiratory

---

[3]   Available at https://www.hhs.gov/sites/default/files/prep-act-advisory-opinion-hhs-ogc.pdf.

DEFENDANTS GLENHAVEN HEALTHCARE LLC'S; CARAVAN OPERATIONS CORP'S.; MATTHEW KARP'S and BENJAMIN KARP'S OPPOSITION TO MOTION TO REMAND

protective devices including N95 masks and even "Non-NIOSH-Approved Disposable Filtering Facepiece Respirators.[4]

Here, Defendants are licensed health care providers who own and operate a skilled nursing facility in Los Angeles County which, as Plaintiffs allege, administers, distributes, dispenses and uses countermeasures and qualified pandemic or epidemic products. While Plaintiffs attempt to depict their claims as involving only policies, procedures, protocols, guidelines or recommendations, not products, the allegations of the First Amended Complaint undermine that depiction. On their face, Plaintiffs' claims center around the issue of the use of masks and other PPE and testing, which are clearly within the definitions of covered countermeasures, as the HSS has broadly defined them since the COVID-19 outbreak.

Plaintiffs' further effort to avoid application of the PREP Act by characterizing their allegations as involving only *inaction*, while the PREP Act contemplates *action* also falls short. Dkt.# 11 at 16.  For example, "administration" of covered COVID counter measures is defined broadly and not merely as an injection of a vaccine." Rather, "administration" is defined as the, "physical provision of the countermeasures to recipients, or activities and decisions directly relating to public and private delivery, distribution and dispensing of the countermeasures to recipients, management and operation of countermeasure programs, or management and operation of locations for purpose of distributing and dispensing countermeasures." 42 U.S.C. § § 247d, 247d-6(i)(1)(D).  Thus, decisions regarding the allocation of PPE and other countermeasures trigger the PREP Act.

### 2.   *The PREP Act Completely Preempts Plaintiffs' Claims.*

The PREP Act provides complete immunity to covered persons for acts which

---

[4]   Available at https://www.fda.gov/medical-devices/coronavirus-disease-2019-covid-19-emergency-use-authorizations-medical-devices/personal-protective-equipment-euas

1  do not rise to a level of "willful misconduct." 42 U.S.C. § 247d-6d. The purpose of

2  the PREP Act is to encourage the quick and efficient deployment of

3  countermeasures during a public health crisis, like the current COVID-19 pandemic.

4  To that end, the PREP Act explicitly forbids states from imposing requirements

5  beyond those of the federal government. 42 U.S.C. § 247d-6d(b)(8).

6      Here, Defendants removed the state court action to federal court asserting,

7  among other reasons, that the PREP Act preempts Plaintiffs' state law claims and

8  provides immunity to Defendants as it pertains to the claims underlying Plaintiffs'

9  state court Complaint. Dkt. #3. Federal jurisdiction is typically governed by the

10  "well-pleaded complaint" doctrine. *See Merrell Dow Pharmaceuticals, Inc. v.*

11  *Thompson,* 478 U.S. 804, 808 (1986). However, "in certain circumstances the

12  preemptive force of federal law" can completely preempt state law causes of action.

13  *Dawson v. Ciba-Geigy Corp, USA*, 145 F. Supp. 2d 565, 568 (D. N.J. 2001). The

14  PREP Act, the CARES Act, and declarations by the Secretary of the Department of

15  Health and Human Services and Plaintiffs' allegations demonstrate complete

16  preemption of the state law causes of action and require denial of Plaintiffs' motion

17  to remand to state court.

18      Complete preemption or "displacing" preemption exists when the force of

19  federal law is so powerful that it displaces any state law cause of action and leaves

20  room only for federal law for purposes of the "well-pleaded complaint" rule.

21  *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-65.(1987). Complete

22  preemption exists when (1) the statute relied upon by defendant as preemptive

23  contains civil enforcement provisions within the scope of which the plaintiff's state

24  claim falls; and (2) there is a "clear indication of Congressional intention to permit

25  removal despite the plaintiff's exclusive reliance on state law." *Railway Labor*

26  *Executives' Ass'n v. Pittsburgh & Lake Erie R.R. Co.,* 858 F.2d 936, 942 (3d Cir.

27  1988) (citing *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463

28  U.S. 1, 24 (1983)). If the two-part test is satisfied, the state law claim is

DEFENDANTS GLENHAVEN HEALTHCARE LLC'S; CARAVAN OPERATIONS CORP'S.; MATTHEW
KARP'S and BENJAMIN KARP'S OPPOSITION TO MOTION TO REMAND

1  "recharacterized" as a federal claim and removal is proper. See also *El Paso Natural*
2  *Gas Co. v. Netztsosie*, 528 U.S. 472 (1999) (complete preemption based on a
3  provision in the Price-Anderson Act which specifically sets forth that the district
4  court holds original jurisdiction over claims arising for provisions of the Act);
5  *Beneficial Nat. Bank v. Anderson,* 539 U.S. 1, 11(2003) (federal question proper
6  under "complete preemption" doctrine in usury action as state law was preempted
7  by National Bank Act which "supersede[d] both the substantive and the remedial
8  provisions of state usury laws and created a federal remedy for overcharges that is
9  exclusive.")

10        In this matter, the PREP Act, which provides an *exclusive federal remedy*
11  governs the claims Plaintiffs assert. 42 USC § 247d-6d(d)(1) ["The sole exception to
12  the immunity from suit and liability of covered persons…shall be for an *exclusive*
13  *Federal* cause of action against a covered person for death or serious physical injury
14  proximately caused by willful misconduct, as defined pursuant to subsection (c)."]

15        On its face, the First Amended Complaint Dkt. # 3, Ex. 7, and Plaintiffs'
16  remand motion Dkt.# 11, confirm that Plaintiffs have filed a claim for damages
17  related to Defendants' alleged wrongdoing with respect to their response to the
18  ongoing COVID-19 global pandemic and their use of countermeasures to prevent
19  the spread of the coronavirus. This matter originates and arises from Defendants'
20  allocation, use, distribution, procurement and administration of various "covered
21  countermeasures" in responding to, mitigating, or otherwise preventing the
22  transmission of the COVID-19 virus, including, but not limited to, PPE. These
23  allegations invoke the PREP Act and complete federal preemption is present here.
24  State courts have no jurisdiction to hear or consider claims arising under this statute.

25        Plaintiffs' discussion of the *Aetna Health Inc. v. Davila,* 542 U.S. 200 (2004)
26  case is unavailing. Plaintiffs contend the two-part test for complete preemption set
27  forth in *Davila* is not satisfied here. Dkt. #11 at 22-23. But, as Plaintiffs
28  acknowledge, the *Davila* test only "applies where a statute lacks specific language

granting federal court jurisdiction." *Id.* Here, the PREP Act specifically states it provides an *exclusive* federal remedy. 42 USC § 247d-6d(d)(1). Plaintiffs argument against complete preemption depends solely on their narrow and unsustainable construction of the PREP Act as if it were a vaccine case. Plaintiffs premise ignores the significant modifications made to the PREP Act in response to the coronavirus and the federal government's efforts to stop the spread of the pandemic.

In that vein, Plaintiffs' argument that the *Kehler* case stands for the proposition that complete preemption is a narrow exception and was not implicated in that case ignores the fact that in *Kehler,* the doctor defendants were sued for acts that occurred *before* administration of the H1N1 vaccine. *Kehler,* supra at *11 (Plaintiffs state law claims of medical negligence were based on conduct which occurred prior to administration of the H1N1 vaccine). In contrast here, the allegations levelled against Glenhaven are premised on conduct that occurred *during* the use of a covered countermeasure. Thus, the allegations implicate the federal PREP Act as an essential element of Plaintiffs' causes of action and give rise to federal question jurisdiction.[5]

The PREP Act does not leave plaintiffs without a remedy, but instead provides, as the  sole remedy for a loss or injury, the Countermeasures Injury Compensation Program ("CICP"), a no-fault, speedy compensation system intended to replace uncertain litigation. 42 U.S.C. 247d-6d(a)(1); see, Department of Health & Human Services "Advisory Opinion on the Public Readiness and emergency

---

[5]   Plaintiffs discussion of a law review article about the application of the PREP Act to vaccine cases is inapposite and irrelevant as is made evident by the recent expansion of the PREP Act as it concerns the novel coronavirus, as discussed herein. (Dkt.# 11 at 22.) Likewise, the case of *Casabianca v. Mount Sinai Med. Ctr. Inc.,* 2014 N.Y. Misc. LEXIS 6998 (N.Y. Sup. Ct. Dec. 02, 2014), is inapposite as it, too, involved the H1N1 flu vaccine. Plaintiffs ignore the significant differences between COVID-19 and the H1N1 PREP Act declarations.

Preparedness Act and the March 10, 2020 Declaration under the Act, April 17, 2020, as Modified on May 19, 2020."

If an individual decides not to accept the compensation under the CICP, the injured individual may pursue a tort claim, but it must be filed in the United States District Court for the District of Columbia, and may *only* be pursued if the claim involves *willful misconduct* and meets other requirements for suit under the PREP Act. 42 U.S.C. 247d-6d-(d) ["the sole exception to the immunity from suit and liability . . . shall be for an exclusive Federal cause of action]. Such a suit "shall be maintained only in the United States District Court for the District of Columbia." 42 U.S.C. 247d-6d(e).

Thus, the PREP Act, under 42 U.S.C. § 247d-6d, provides complete immunity to covered persons for acts which do not rise to the level of "willful misconduct" and further provides for an *exclusive federal remedy* to potential plaintiffs in order to recover damages based upon allegations of willful misconduct. The PREP Act contains the characteristics held to be completely preemptive of state law causes of action: it provides a civil remedy for the types of claims made by Plaintiffs and the scope and plain language of the PREP Act clearly indicate a Congressional intent to have the types of claims asserted as state law claims by Plaintiffs here decided exclusively in federal court.

## C.    Federal Officer Jurisdiction Exists

Removal is also proper under 28 U.S.C. § 1442(a)(1), which provides for removal when a defendant is sued for acts undertaken at the direction of a federal officer. "Unlike the general removal statute, the federal officer removal statute [Section 1442(a)] is to be 'broadly construed' in favor of a federal forum." *In re Commonwealth's Motion to Appoint Counsel Against or Directed to Def. Ass'n of Phila.,* 790 F.3d 457, 466 (3d Cir. 2015) (quoting *Sun Buick, Inc. v. Saab Cars USA, Inc.,* 26 F.3d 1259, 1262 (3d Cir. 1994). The case is removable pursuant to Section 1442(a) because "(1) Defendants are 'persons' within the meaning of the statute; (2)

DEFENDANTS GLENHAVEN HEALTHCARE LLC'S; CARAVAN OPERATIONS CORP'S.; MATTHEW KARP'S and BENJAMIN KARP'S OPPOSITION TO MOTION TO REMAND

the Plaintiffs' claims are based upon Defendants' conduct 'acting under' the United States, its agencies, or its officers; (3) the Plaintiffs' claims are 'for, or relating to' an act under color of federal office; and (4) Defendants raise a colorable federal defense to the Plaintiff's claims." *Papp v. Fore-Kast Sales Co*., 842 F.3d 805, 811 (3d Cir. 2016). All requirements for removal under § 1442(a)(1) are satisfied here.

Plaintiffs contend merely being a federally regulated business does not mean Defendants were acting on behalf of the federal government. Dkt.# 11 at 24-25. Plaintiffs misconstrue the facts and Defendants contentions.

The "acting under" requirement, like the federal removal statute overall, is to be "liberally construe[d]" to cover actions that involve "an effort to assist, or to help carry out, the federal supervisor's duties or tasks." *Ruppel v. CBS Corp.,* 701 F.3d 1176, 1181 (7th Cir. 2012)(quoting *Watson v. Philip Morris Cos., Inc*., 551 U.S. 142 (2007)); see also *Defender Ass'n,* 790 F.3d 457, 468 (2015). To satisfy the second requirement ("acting under" a federal officer) "a private person's actions 'must involve an effort to assist, or to help carry out, the duties or tasks of the federal superior.'" *Watson v. Philip Morris Cos,* 551 U.S. 142, 152 (2007).  Federal courts "have explicitly rejected the notion that a defendant could only be 'acting under' a federal officer if the complained-of conduct was done at the specific behest of the federal officer or agency."  *Papp v. Fore-Kast Sales Co.,* 842 F.3d 805, 813 (2016). A specific instruction from a federal officer, or a detailed regulation to compel specific conduct satisfies the second requirement. See *Winters v. Diamond Shamrock Chem. Co*., 149 F.3d. 387 (5th Cir. 1998).

Here, Defendants, in taking steps to prevent the spread of COVID-19, did so in compliance with CDC and CMS directives, which were aimed at helping achieve the federal government's efforts at stopping or limiting the spread of COVID-19. On March 10, 2020, CMS published a memorandum clarifying and amending policies

4826-8582-3687.1

17

DEFENDANTS GLENHAVEN HEALTHCARE LLC'S; CARAVAN OPERATIONS CORP'S.; MATTHEW KARP'S and BENJAMIN KARP'S OPPOSITION TO MOTION TO REMAND

and guidance in light of the CDC's expansion of the types of facemasks healthcare workers may use in situations involving COVID-19.[6] In doing so, CMS acknowledged the federal government was taking "critical steps" to prepare health care facilities to respond to COVID-19, and acknowledged the need to "explore flexibilities and innovative approaches within our regulations to allow health care entities to meet the critical health needs of the country." The memorandum issued on this date cites specifically to updated guidance from the CDC addressing the supply, allocation, and use of various items utilized to prevent the spread of infection and directly treat the virus including PPE and respirators.

Plaintiffs' focus on direct orders of a federal officer in arguing that federal officer jurisdiction has not been shown is misplaced. Dkt. #11 at 26-28. In a recent decision affirming the existence of federal officer jurisdiction, the court agreed that it is conduct that helps the federal government achieve its goals, not just the fact an entity is federally regulated, that creates federal officer jurisdiction. In *Jane Doe I et al. v. UMPM,* 2:20-cv-00359 U.S. Dist. Ct., Western District of Pennsylvania (July 31, 2020), a hospital's creation of a website as part of DHHS's push for shareable electronic medical records was found to support federal officer jurisdiction. The court noted the private entity's conduct—creating and enhancing its website to encourage its use—was sufficient to support federal officer removal because it involved acts done to help the federal government achieve its goals. The court affirmed federal officer jurisdiction, noting that questions whether federal law preempts state law and whether a private entity's conduct was outside the scope of its federal duties "is the very thing that should be left to a federal court to decide."

Furthermore, Defendants, in offering skilled nursing facilities and care, are

---

[6]   Centers for Medicare & Medicaid Services, Guidance for use of Certain Industrial Respirators by Health Care Personnel (March 10, 2020) (available at https://www.cms.gov/files/document/qso-20-17-all.pdf).

subject to a high degree of Federal regulation enacted to achieve the federal objective of allowing each resident in long term care facilities to "attain and maintain [] highest practicable physical, mental, and psychosocial well-being." 42 U.S.C § 1396r; 42 U.S.C. § 1395i-3; 42 C.F.R § 483. Providers of services seeking to participate in the Medicare or Medicaid program, or both, must enter into an agreement with the Secretary or the state Medicaid agency, as appropriate. Long term care facilities seeking to be Medicare and Medicaid providers of services must be certified as meeting federal participation requirements. 81 FR 68688. The Federal government has a stated objective to provide for the care of nursing home residents and created a mandatory Federal regulatory framework to convert the private entities such as Glenhaven previously performing this service as Federal officers or agents.

One example of the binding nature of the regulatory framework that defeats Plaintiffs' contention that the regulatory scheme consists of merely suggestions or recommendations is the mandatory nature of compliance with the "Medicare and Medicaid Programs; Emergency Preparedness Requirements for Medicare and Medicaid Participating Providers and Suppliers" Final Rule (Fed. Reg. 81, 63860 (Sept. 16, 2016)) ("Final Rule"). This Final Rule establishes national emergency preparedness **requirements** for participating providers and certified suppliers to plan adequately for both natural and man-made disasters, and coordinate with Federal, state, tribal, regional and local emergency preparedness systems. The Final Rule also assists providers and suppliers to adequately prepare to meet the needs of patients, clients, residents, and participants during disasters and emergency situations, striving to provide consistent requirements across provider and supplier-types, with some variations. Consistent with the emergency requirements, CMS would issue interpretive guidance and directives. **However, there can be no question that these were mandatory requirements**.

The present COVID-19 pandemic resulted in a number of new regulations,

1   directives, guidance and requirements issued as a result of the Federal government
2   acting through the regulatory framework of CMS and the CDC to convert nursing
3   homes into frontline responders to the national COVID crisis. Indeed, the CDC
4   acknowledged that current knowledge of the nature of the virus was evolving, and
5   that these efforts were part of an "ongoing US public health response to identify and
6   contain this outbreak and prevent sustained spread of 2019-nCov in the United
7   States."[7]   CMS directed infection control efforts and clarified CDC guidance to
8   preserve scarce medical resources, including PPE, and maximizing the capacity of
9   the healthcare system to navigate the spread of the pandemic. Further, CMS
10  **ordered** facilities to restrict visitors, cancel communal activities, screen staff,
11  amend policies regarding interaction with vendors, and handle potential end-of-life
12  interactions with family members, among other interventions.[8] On April 2, 2020,
13  CMS issued **new** guidelines aimed specifically to long-term care facilities to
14  mitigate the spread of COVID-19, with the stated purpose of 'critical, needed
15  leadership" and issuing "immediate" actions to "keep patients and residents safe."[9]

16       Specifically, CMS directed long-term care facilities to "immediately" ensure
17  compliance with "all CMC and CDC guidance related to infection control." Again,
18  CMS specifically referenced and referred facilities to updated and revised CDC
19  guidelines. CMS also implemented a number of actions to be undertaken
20  immediately including 1) universal screening; 2) conservation of PPE; 3) proper

21  _____

22  [7]   Centers for Disease Control and Prevention, Update and Interim Guidance on
    Outbreak of 2019 Novel Coronavirus (February 1, 2020) (available at
23  https://emergency.cdc.gov/han/HAN00427.asp).

24  [8]   Centers for Medicare & Medicaid Services, Guidance for Infection Control
    and Prevention of Coronavirus Disease 2019 (COVID-19) in Nursing Homes
25  (Revised) (March 13, 2020) (available at https://www.cms.gov/files/document/qso-
    20-14-nh-revised.pdf).

26  [9]   Centers for Medicare & Medicaid Services, COVID-19 Long-Term Care
    Facility    Guidance    (April    2,    2020)    (available    at
27  https://www.cms.gov/files/document/4220-covid-19-long-term-care-facility-
    guidance.pdf).

28  4826-8582-3687.1

DEFENDANTS GLENHAVEN HEALTHCARE LLC'S.; CARAVAN OPERATIONS CORP'S.; MATTHEW
KARP'S and BENJAMIN KARP'S OPPOSITION TO MOTION TO REMAND

PPE use; and 4) allocation of separate staffing, among other directives. As has been previously stated, instructions were part of mandatory regulations imposed on long term care facilities by OBRA and regulations issued by CMS. On April 19, 2020, CMS announced new regulatory requirements requiring nursing facilities to inform residents, families, and representatives of COVID-19 cases.[10] Nursing homes were required to report COVID-19 cases and deaths directly to the CDC on an ongoing basis as the result of an unprecedented CMS regulatory requirement issued on May 1, 2020. The Trump Administration implemented the new reporting requirement to develop a robust federal disease surveillance system to quickly identify problem areas and inform future infection control actions. By law, CMS regulates and oversees nursing homes, which are certified to provide Medicare and/or Medicaid skilled nursing facility services. This clearly demonstrates the fact that the defendants were acting at the direction of the Federal government and as its agent in responding to COVID-19 response.

Defendants, in following these directives, were engaged in an effort to assist, or to help carry out, the duties or tasks of CMS and the CDC in responding to the COVID-19 pandemic. Defendants' actions and conduct were taken due to unprecedented and "strong government intervention" which went beyond the "mere auspices of federal direction." *See Fung v. Abex Corp.,* 816 F. Supp. 569, 572 (N. D. Cal. 1992). CMS was controlling and reimbursing the Defendants for actions taken in response to the COVID-19 pandemic and President Donald J. Trump's proclamation declaring a national emergency concerning the novel COVID-19 outbreak on March 13, 2020. Following the national emergency proclamation, rapid action was taken to waive restrictions and expand capacity for healthcare entities,

---

[10] Centers for Medicare & Medicaid Services, Press Release "Trump Administration Announces New Nursing Homes COVID-19 Transparency Effort" (April 19, 2020) (available at https://www.cms.gov/newsroom/press-releases/trump-administration-announces-new-nursing-homes-covid-19-transparency-effort).

providers, and suppliers to coordinate a national response to the national emergency. This can leave no question that there was a national response effort which converted the Defendants into agents of the United States.

Finally, Defendants have satisfied the "nexus" or "causation" requirement for federal officer jurisdiction. This requires that the alleged conduct have been undertaken "for or relating to" a federal office. To meet this requirement, "it is sufficient for there to be a connection or association between the act in question and the federal office." *Defender Ass'n,* 790 F.3d at 471. There is a clear causal nexus between the claims against Defendants and the actions taken by Defendants in responding to and administering care related to the COVID-19 outbreak.  Plaintiffs' Complaint specifically alleges a deficiency in Defendants' actions concerning use of PPE and infection control procedures taken in efforts to  prevent the transmission and spread of COVID-19 while preserving resources to enable a nationwide response. Unquestionably, the nexus element is met as evidenced by various orders, guidelines and recommendations followed by the Defendants' in addressing same. Plaintiffs' motion concedes this point as it is not mentioned.

In addition, Defendants meet the  requirement of the existence of a colorable federal defense. Defendants intend to assert, among others, the immunity under the PREP Act applies to the present action. For the purposes of removal, the defense must be "colorable" and need not be "clearly sustainable" as the purpose for the removal statute is to secure that the validity of the defense may be tried in federal court. *Willingham v. Morgan,* 395 U.S. 402, 407 (1969). "[O]ne of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court;" for this reason "we have rejected a narrow, grudging" approach when analyzing whether a defendant had raised a colorable federal defense. *Jefferson Cty. v. Acker,* 527 U.S. 423, 431, 119 S. Ct. 2069, 144 L. Ed. 2d 408 (1999). This point is also not argued by Plaintiffs. However, based on the preemption argument it is clear that defendants have more than a colorable

1   defense under the PREP Act, and this element is satisfied.

2       Based on the foregoing, Defendants' basis for removal pursuant to the Federal

3   Officer Removal Statute was proper and Plaintiffs' motion to remand should be

4   denied.

5       **D.    Plaintiffs Should Not Be Awarded Costs Based on Defendants'**

6           **Good Faith Removal of this Action**

7       Plaintiffs request the Court to award Plaintiffs fees and costs for filing the

8   motion to remand pursuant to 28 U.S.C. § 1447(c).  Dkt. #11 at 29-30.

9       The U. S. Supreme Court has made clear that "[a]bsent unusual

10  circumstances, courts may award attorney's fees under § 1447(c) **only** where the

11  removing party lacked an objectively reasonable basis for seeking removal." *Martin*

12  *v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005) (emphasis added). Conversely,

13  when an objectively reasonable basis exists, fees should be denied. See, e.g.,

14  *Hornbuckle v. State Farm Lloyds*, 385 F.3d 538, 541 (2004); *Valdes v. Wal-Mart*

15  *Stores, Inc.*, 199 F.3d 290, 293 (5th Cir. 2000); *Daleske v. Fairfield Communities,*

16  *17 F.3d 321, 325 (10th Cir. 1994).*  Here, even Plaintiffs concede the issues

17  presented are "novel." See Dkt. # 11-1, p. 3, ¶ 11. There is little published precedent

18  governing these issues, and Plaintiffs have provided no authority suggesting

19  Defendants' removal is improper or not objectively reasonable under these

20  circumstances. Defendants have indeed demonstrated an objectively reasonable

21  basis for believing tis case fell within the district court's federal jurisdiction based

22  on the significant federal issues raised by Plaintiffs' allegations of improper use,

23  distribution, allocation and administration of PPE and testing to prevent the spread

24  of the novel coronavirus and the infrequently interpreted, but plainly applicable

25  provisions of the PREP Act, which have been evolving and modified as the

26  pandemic marches on. On the other hand, Plaintiffs have failed to show either

27  "unusual circumstances" or a lack of objective reasonableness. Therefore, Plaintiff's

28  fee request lacks merit and should be denied outright.

4826-8582-3687.1

23

DEFENDANTS GLENHAVEN HEALTHCARE LLC'S; CARAVAN OPERATIONS CORP'S.; MATTHEW
KARP'S and BENJAMIN KARP'S OPPOSITION TO MOTION TO REMAND

## IV.   <u>CONCLUSION</u>

For the reasons stated herein, the Notice of Removal, and accompanying documents and exhibits, Defendants request that this Court deny Plaintiffs' motion to remand.

DATED: August 6, 2020          LEWIS BRISBOIS BISGAARD & SMITH LLP


                                        */s/ Lynnette A. Christopoulos*
                              By:   _____
                                        Lynnette A. Christopoulos
                                        Attorneys for Defendants, GLENHAVEN
                                        HEALTHCARE LLC; CARAVAN
                                        OPERATIONS CORP.; MATTHEW
                                        KARP and  BENJAMIN KARP

# FEDERAL COURT PROOF OF SERVICE

Jackie Saldana v. Glenhaven Healthcare LLC, et al.
Federal Case No. 2:20-cv-05631-FMO-MAA

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

At the time of service, I was over 18 years of age and not a party to the action. My business address is 633 West 5th Street, Suite 4000, Los Angeles, CA 90071.  I am employed in the office of a member of the bar of this Court at whose direction the service was made.

On August 6, 2020, I served the following document(s):  **DEFENDANTS GLENHAVEN HEALTHCARE LLC'S; CARAVAN OPERATIONS CORP'S.; MATTHEW KARP'S and BENJAMIN KARP'S OPPOSITION TO MOTION TO REMAND**

I served the documents on the following persons at the following addresses (including fax numbers and e-mail addresses, if applicable):

Scott C. Glovsky, Esq.
Roberta Liao, Esq.
Al Heath, Esq.
LAW OFFICES OF SCOTT GLOVSKY, APC
343 Harvard Avenue
Claremont, CA 91711
Tel. No.: (626) 243-5598
Fax. No.: (866) 243-2243
Email: sglovsky@scottglovskylaw.com;
rliao@scottglovskylaw.com;
aheath@scottglovskylaw.com

The documents were served by the following means:

☒ (BY COURT'S CM/ECF SYSTEM)  Pursuant to Local Rule, I electronically filed the documents with the Clerk of the Court using the CM/ECF system, which sent notification of that filing to the persons listed above.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on August 6, 2020, at Los Angeles, California.

_/s/ Yissel Lopez_
Yissel Lopez

4826-8582-3687.1

1

DEFENDANTS GLENHAVEN HEALTHCARE LLC'S; CARAVAN OPERATIONS CORP'S.; MATTHEW KARP'S and BENJAMIN KARP'S OPPOSITION TO MOTION TO REMAND