**LEWIS BRISBOIS BISGAARD & SMITH LLP**
KATHLEEN M. WALKER, SB # 156128
  E-Mail: Kathleen.Walker@lewisbrisbois.com
LYNNETTE A. CHRISTOPOULOS, SB # 192123
  E-Mail: Lynnette.Christopoulos@lewisbrisbois.com
633 West 5th Street, Suite 4000
Los Angeles, California 90071
Telephone: 213.250.1800
Facsimile: 213.250.7900

Attorneys for Defendants, GLENHAVEN
HEALTHCARE LLC; CARAVAN
OPERATIONS CORP.; MATTHEW
KARP and BENJAMIN KARP

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| JACKIE SALDANA, CELIA SALDANA, RICARDO SALDANA JR., and MARIA SALDANA, as individuals and as successors and heirs of RICARDO SALDANA, deceased, <br><br> Plaintiffs, <br><br> vs. <br><br> GLENHAVEN HEALTHCARE LLC, a California corporation; CARAVAN OPERATIONS CORP., a California corporation; MATTHEW KARP, an individual; BENJAMIN KARP, an individual, and DOES 1 through 100, inclusive, <br><br> Defendants. | CASE NO. 2:20-cv-05631 FMO-MAAx <br><br> **DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS** <br><br> Hearing:    Sept. 3, 2020 <br> Time:       10:00 a.m. <br> Courtroom:  6D <br> Judge:      Hon. Fernando M. Olguin <br><br> Trial Date:    None Set |

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.    <u>INTRODUCTION</u>

This case presents issues never before decided under the PREP Act regarding the application of PREP Act liability immunity to COVID-19 lawsuits. When

4847-3818-1832.1

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ...................................................................................................1

II.    THE PREP ACT APPLIES AND REQUIRES DISMISSAL OF THIS ACTION ..............1

     A.    The PREP Act Must Be Interpreted In Light of the COVID-19 Pandemic and Recent HHS Declarations of Emergency to Address it. ......................................1

     B.    PREP Act Immunity Applies to Plaintiffs' Claims. ...................................................3

     C.    Defendants are Qualified Persons and/or Program Planners ...................................6

     D.    Plaintiffs Have a Remedy Under the CICP and Indeed, that is Their Exclusive Remedy. ......................................................................................................8

III.   PLAINTIFFS' COMPLAINT MUST BE DISMISSED BECAUSE IT FAILS TO SUFFICIENTLY ALLEGE CLAIMS UNDER ANY OF THEIR THEORIES OF RECOVERY. .........................................................................................................9

     A.    The Elder Abuse Cause of Action is Insufficiently Alleged. .....................................9

     B.    Joint and Several Liability Is Not Sufficiently Alleged Against Defendants Caravan Operations Corp., Matthew Karp or Benjamin Karp to Impose Liability on Those Defendants for Elder Abuse ......................................................11

     C.    The Custodial Negligence Cause of Action Is Not Sufficiently Alleged. ................14

     D.    The Allegations and Prayer for Punitive Damages Should be Stricken. ..................15

          1.   Code of Civil Procedure Section 425.13 Applies to Plaintiffs' Claims. ...............................................................................................15

          2.   California Code of Civil Procedure section 425.13 is Applicable in Federal Court. .......................................................................................17

          3.   Plaintiffs Have Not Sufficiently Alleged Facts to Support Recovery of Punitive Damages. ...............................................................................18

IV.   CONCLUSION ...................................................................................................19

4847-3818-1832.1

i

**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS**

1

## TABLE OF AUTHORITIES

2

**Page**

3

4

**FEDERAL CASES**

5

*Allen v. Woodford,*
    No. 1:05-CV-01104-OWW-LJO, 2006 U.S. Dist. LEXIS 72988, 2006 WL
6
    2868967, at *40 (E.D. Cal. Oct. 6, 2006)............................................................ 17

7

*Casablanca v. Mount Sinai Med. Ctr., Inc.*
    2014 WL 10413521 (N.Y. Sup. Ct. 2014) ........................................................... 5
8

*Fraher v. Surydevara,*
9
    No. 1:06-cv-01120-AWI-GSA PC, 2009 U.S. Dist. LEXIS 41340, 2009 WL
    1371829, at *2 (E.D. Cal. May 15, 2009) ........................................................... 18
10

*Hills v. Intensive Air Inc.,*
11
    2007 WL 521222 (N.D. Cal. 2007)...................................................................... 18

12

*Kehler v. Hood,* 2012 WL 1945952
    (E.D. Mo. 2012) ..................................................................................................... 5
13

*Moreno v. The GEO Group, Inc.,*
14
    No. 1:07-CV-01630-CKJ, 2009 U.S. Dist. LEXIS ............................................ 18

15

*Parker v. St. Lawrence County Pub. Health Dept.,*
    102 A.D.3d 140 (N.Y. App. Div. 2012).............................................................. 4
16

*Rhodes v. Placer Cnty.* No. 2:09-CV-00489 MCE KNJ PS, 2011 U.S. Dist. LEXIS 35498,
17
    2011 WL 1302240, at *21 (E.D. Cal. Mar. 31, 2011)........................................ 17

18

*Thomas v. Hickman,*
    2006 WL 2868967 (E.D. Cal. 2006) ................................................................. 17
19

*Vess v. Ciba-Beigy Corp.,*
20
    317 F.3d 1097, 1106 (9th Cir. 2003).................................................................. 19

21

22

**STATE CASES**
23

*Benun v. Superior Court*
24
    123 Cal. App.4th 113 (2004)............................................................................... 15

25

*Campagna v. Market St. Ry. Co.,*
    24 Cal.2d 304 (1944)........................................................................................... 12
26

*Carter v. Prime Healthcare Paradise Valley LLC*
27
    198 Cal.App.4th 396 (2011) ............................................................................ 9, 10

28

4847-3818-1832.1

ii

**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS**

*Central Pathology Service Medical Clinic, Inc. v. Superior Court*
    3 Cal. 4th 181(1993)........................................................................ 16

*Cislaw v. Southland Corp.,*
    4 Cal.App.4th 1284 (1992) ........................................................... 13

*College Hospital Inc. v. Superior Court*
    8 Cal. 4th 704 (1994)................................................................... 15

*Covenant Care, Inc. v. Superior Court,*
    32 Cal.4th 771 (2004).......................................................... 9, 10, 15

*Delaney v. Baker,*
    20 Cal.4th 23 (1999)................................................................. 9, 15

*Hennessey's Tavern, Inc. v. American Air Filter Co.,*
    204 Cal.App.3d 1351 (1988) ........................................................ 12

*Institute of Veterinary Pathology, Inc. v. California Health Labs, Inc.,*
    116 Cal.App.3d 111 (1981).......................................................... 13

*Meadows v. Emett & Chandler,*
    99 Cal. App. 2d 496 (1950) ......................................................... 13

*Mesler v. Bragg Management Co.,*
    39 Cal. 3d 290 (1985)................................................................. 13

*Pfeifer v. John Crane, Inc.,*
    220 Cal.App.4th 1270 (2013) ....................................................... 18

*Rollins Burdick Hunter of So. Cal., Inc. v. Alexander & Alexander Servs., Inc.,*
    206 Cal.App.3d 1 (1988) ............................................................. 13

*Unruh-Haxton v. Regents of University of California,*
    162 Cal.App.4th 343 (2008) ........................................................ 12

*Waste Management, Inc. v. Superior Court,*
    119 Cal. App. 4th 105 (2004)....................................................... 13

*Weiner v. Fleischman,*
    54 Cal.3d 476, 482 (1991) ........................................................... 12

*Winn v. Pioneer Medical Group, Inc.*
    63 Cal.4th 148 (2016)............................................................ 10, 11

## STATUTES

42 U.S.C. 247d-6d(a)(1).................................................................... 2, 4

42 U.S.C. 247d-6d(a)(2)(B) ................................................................. 4

42 U.S.C. 247d-6d(a)(4)(B). ................................................................ 7

iii

**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS**

42 U.S.C. 247d-6d(i)(2) ........................................................................ 3

42 U.S.C. 247d-6d(i)(5) ........................................................................ 7

42 U.S.C. 247d-6e(b)(4) ........................................................................ 8

Cal. Civ. Code § 3294(c) ........................................................................ 16

Code of Civil Procedure Section 425.13 ........................................ 15, 16, 17, 18

Welf. & Inst. Code §15657.2 ........................................................................ 15

**REGULATIONS**

85 Fed. Reg. 13198, 15200 ........................................................................ 6

85 Fed. Reg. 15198-203 ........................................................................ 2

85 Fed. Reg. 15201 ........................................................................ 2, 8

85 Fed. Reg. 35101 ........................................................................ 3

**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS**

originally enacted in 2005, the PREP Act addressed vaccines. Plaintiffs rely heavily on three cases addressing the PREP Act and a law review article that pre-date the COVID-19 pandemic for the proposition that the PREP Act provides no immunity for claims unrelated to vaccines, ignoring the fact there is no vaccine for COVID-19, yet. Accordingly, these authorities provide no support for plaintiffs' argument the PREP Act does not apply to the allegations of their complaint.

The Secretary of Health and Human Services (HHS Secretary) declared a public health emergency specifically in response to COVID-19 and has published two amendments to that declaration to clarify the broad scope of its application. In addition, Congress enacted two major pieces of legislation specifically in response to the COVID-19 pandemic. These declarations and this legislation, aimed at encouraging mitigation of the pandemic in the face of much uncertainty, provide the guidance necessary to determine that plaintiffs' complaint must be dismissed because each of their claims are barred by the PREP Act immunities.

Plaintiffs' additional arguments that their complaint adequately alleges the elements of the causes of action asserted therein likewise are unavailing. The boilerplate allegations are conclusory and factually devoid. They do not meet the *Iqbal* pleading standard requiring concrete facts and must be dismissed.

## II.   THE PREP ACT APPLIES AND REQUIRES DISMISSAL OF THIS ACTION

### A.   The PREP Act Must Be Interpreted In Light of the COVID-19 Pandemic and Recent HHS Declarations of Emergency to Address It.

Plaintiffs gravely misstate both the nature and application of the PREP Act. Plaintiffs cite a 2012 law review article for the premise that the PREP Act does not provide immunity to medical providers for negligence claims "unrelated to vaccine administration and use." Dkt. 19 at 11. The citation is irrelevant to the issues in this case. Plaintiffs are correct the PREP Act was originally enacted to address

**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS**

administration of vaccines. The PREP Act generally provides that "a covered person shall be immune from suit and liability under Federal and State law with respect to claims for loss caused by, arising out of, relating to, or resulting from the administration to or use by an individual of a covered countermeasure if a declaration under subsection (b) has been issued with respect to such countermeasure." 42 U.S.C. 247d-6d(a)(1). When enacted, and subsequently, the PREP Act addressed vaccines relating to the swine flu and H1N1.

In March 2020, the Department of Health & Human Services and Congress declared a new public health emergency and enacted new legislation specifically addressing the pandemic caused by COVID-19. Plaintiffs incorrectly describe the federal government's response and the scope of the immunity provided by the PREP Act as narrowly limited to claims made by a limited "population" of people to whom countermeasures are actively administered or used. The HHS Secretary's Declarations and legislation define the immunity much more broadly than that.

The Department of Health & Human Services Secretary (HHS Secretary) declared a public health emergency related to COVID-19 on March 17, 2020 (the "Declaration"). 85 Fed. Reg. 15198-203. The Declaration addressed the COVID-19 outbreak which remains "a significant public health challenge that requires a sustained, coordinated proactive response by the Government in order to contain and mitigate the spread of COVID-19." Id. at 15198.  The Declaration describes the activities for which liability immunity is in effect as broadly including the "manufacture, testing, development, distribution, administration, and use of one or more Covered Countermeasures." 85 Fed. Reg. 15201. Covered countermeasures as set forth in the PREP Act means any device, drug or biological product, which is used, modified, or procured to diagnose, mitigate, prevent, treat or cure, in this case,

2

**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS**

COVID-19. 42 U.S.C. 247d-6d(i)(1), (7).[1] Covered persons are defined as including program planners of countermeasures, and "qualified persons who prescribe, administer or dispense such countermeasure." 42 U.S.C. 247d-6d(i)(2).

On April 15, 2020, the HHS Secretary amended the Declaration to extend liability immunity to covered countermeasures authorized under the CARES Act— respiratory protective devices approved by NIOSH. 85 Fed. Reg. 21013.

Plaintiffs omit discussion of the Second Amendment to the Declaration issued on June 8, 2020. The Second Amendment addresses the omission from the statutory definition of "Covered Countermeasures" of qualified pandemic and epidemic products that "limit the harm such a pandemic or epidemic might otherwise cause." 85 Fed. Reg. 35101. The Second Amendment clarifies that "the Secretary intended to identify the full range of qualified countermeasures in the March 10, 2020 Declaration." Id. Thus, immunity under the PREP Act is specifically extended beyond vaccines and drugs to include drugs and devices that mitigate shortages in healthcare resources "from **personal protective equipment** to healthcare providers," which the Secretary describes as "essential in the whole-of-Nation response to the COVID-19 pandemic." Id. at 35102. "Covered Countermeasures" would include PPE such as masks and gowns, and COVID-19 tests, which are the subject of Plaintiffs' complaint.

### B.      PREP Act Immunity Applies to Plaintiffs' Claims.

Further ignoring the broad scope of PREP Act immunity, Plaintiffs contend the PREP Act applies only to plaintiffs who allege a covered countermeasure was "administered to, or used by" that person. Dkt. 19, at 14. There is no allegation that masks or other PPE or COVID-19 tests were administered to or used by Decedent.

---

[1]   A complete list of devices subject to FDA emergency use authorization can be found at http://www.fda.gov/emergency-preparedness-and-response/mcm-legal-reuglatory-and-policy-framework/emergency-use-authorization.

**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS**

Thus, according to Plaintiffs because the "population" for whom liability immunity arises consists only of those persons who are administered or who use covered countermeasures, the PREP Act does not apply here. But, the Secretary's Declaration, in Section X, specifically states that "under the PREP Act, liability protection extends beyond the Population specified in the Declaration. Specifically, liability immunity is afforded (1) to manufacturers and distributors **without regard to whether the countermeasure is used by or administered to this population**, and (2) to program planners and qualified persons when the countermeasure is either used by or administered to this population or the program planner or qualified person reasonably could have believed the recipient was in this population." 42 U.S.C. 247d-6d(a)(4), 247d-6d(b)(2)(C). Clearly, the focus of liability immunity extends beyond just patients to a broad range of persons and entities responding to the pandemic.

Further, the term "administered to" extends far beyond physical application or use and includes, "**activities and decisions directly relating to public and private delivery, distribution, and dispensing of the countermeasures** to recipients; management and operation of countermeasure programs; or management and operation of locations for purpose of distributing and dispensing countermeasures." 85 Fed. Reg. 15198, 15202 (March 17, 2020); 42 U.S.C. 247d-6d(a)(2)(B). The conduct of which Defendants are accused—decisions regarding the delivery, distribution and dispensing of PPE such as masks, gowns and testing—clearly falls within that definition of "administered to."

Plaintiffs rely on *Parker v. St. Lawrence County Pub. Health Dept.,* 102 A.D.3d 140 (N.Y. App. Div. 2012), for the proposition that the PREP Act applied to a school administering a H1N1 vaccine to a student because it involved the affirmative act of providing the vaccine to the child. Dkt. 19 at 16. As even Plaintiffs appear to concede, however, the facts are not on point. The *Parker* decision *does*, however, support Defendants' contention the complaint must be

**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS**

1  dismissed because all of plaintiffs state law claims are preempted by the clear
2  language of the PREP Act. Id. at 144. That was the sole issue decided on appeal in
3  *Parker,* which provides strong support for granting Defendants' motion to dismiss.

4      Plaintiff also points to *Casablanca v. Mount Sinai Med. Ctr., Inc.* 2014 WL
5  10413521 (N.Y. Sup. Ct. 2014) as a case with more analogous facts than those in
6  *Parker.* Dkt. 19 at 17. However, *Casablanca* was decided under a declaration
7  related to a specific vaccine—the H1N1 vaccine. The court's discussion of the
8  *failure to administer or use* the H1N1 vaccine as the key terms for analyzing PREP
9  Act application is inapposite. Here, there is no vaccine for COVID-19. The COVID-
10 19 Declaration and its amendments apply to a much broader spectrum of activities
11 and countermeasures. As discussed herein, the application of the PREP Act
12 immunity to the acts Defendants are alleged to have engaged in is governed by and
13 clearly established under the HHS Secretary's declaration and amendments specific
14 to the COVID-19 pandemic.

15     Finally, Plaintiffs rely on *Kehler v. Hood,* 2012 WL 1945952 (E.D. Mo.
16 2012) for the notion that the failure to act is not sufficient to implicate PREP Act
17 immunity. Dkt. 19 at 17. But, Plaintiffs fail to mention that in *Kehler,* the vaccine
18 manufacturer was dismissed without dispute because the PREP Act applied and the
19 remaining defendant doctors and hospitals did not argue preemption under the PREP
20 Act applied to the claims made against them. Neither *Kehler, Parker,* or *Casablanca*
21 support plaintiffs arguments against dismissal of their complaint because the PREP
22 Act preempts their claims.

23     In addition, Plaintiffs argue there is no causal link between the administration
24 or use covered countermeasures and Plaintiffs' injuries. However, the HHS
25 Secretary explains that the countermeasure need not be the proximate cause of the
26 injury. Indeed, the PREP Act would preempt and preclude "liability claims, such as
27 a slip and fall or vehicular accident by a recipient of a countermeasure against a
28 retail store that dispenses countermeasures where the allegation as to the cause of

**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS**

1  the injury is lax security or poor crowd control." 85 Fed. Reg. 13198, 15200 (March
2  17, 2020).

3        Here, plaintiffs claim the injury was caused by the alleged failure of staff to
4  use PPE or failure to quickly test for COVID-19. The allegation as to the cause of
5  the injury, like lax security or poor crowd control, is lax use of PPE and poor
6  testing, which allegedly resulted in Decedent's injury and death. Thus, plaintiffs
7  argument that because the PPE and testing was not administered to or used by
8  Decedent PREP Act immunity does not apply, is plainly disproved by the express
9  language of the HHS Secretary's Declaration and the text of the PREP Act.

10       The PREP Act does not state the "covered person" must actually be the
11  individual who uses a countermeasure. Instead, immunity applies to a defendant
12  who is a "covered person" where the claim for loss arises out of or relates to the
13  administration to or use by "*an individual*" of a covered countermeasure. Plaintiffs'
14  complaint alleges their injuries resulted from Defendants failing to take measures
15  such as providing PPE, testing, and isolating infected or exposed staff or residents.
16  These allegations invoke the use of countermeasures by individuals at Glenhaven,
17  including Defendants' decisions and activities regarding administration of
18  countermeasures to recipients. The term "recipients" cannot be interpreted narrowly
19  to mean only residents, otherwise Congress and the HHS Secretary would not have
20  included PPE such as masks and face shields for the purpose of preventing or
21  mitigating the spread of COVID-19 as a covered countermeasure, as such PPE
22  might be dispensed to both residents and staff. Likewise, the broad term
23  "individual" used in the PREP Act immunity clause could have been, but is not
24  limited to either "a covered person" or the "patient" or "plaintiff."  Where Congress
25  could have, but did not use such limited statutory language it is improper to read
26  such limitations into the text.

27       **C.     Defendants are Qualified Persons and/or Program Planners.**

28       Plaintiffs further argue Defendants are not "qualified persons" or "program

**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS**

planners."   Dkt. 19 at 19. First, Plaintiffs contend Defendants are not "qualified persons" because only an individual licensed as a health professional can be a "qualified person" and the two individual defendants are not alleged to be licensed health professionals. The complaint, however, alleges all defendants participated in the alleged negligent conduct, which included decisions about the administration, delivery or dispensing of covered countermeasures. "Qualified persons" are defined as including:

> "[a]ny person authorized in accordance with the public health and medical emergency response of the Authority Having Jurisdiction, as described in Section VII below, to prescribe, **administer, deliver, distribute or dispense** the Covered Countermeasures, and their officials, agents, employees, contractors and volunteers, following a Declaration of an emergency."

85 Fed. Reg. at 15202.

An "Authority Having Jurisdiction" includes the HHS, and persons acting in accordance with HHS guidance in responding to a declared public emergency, is a qualified person. Thus, an individual need not be a licensed health professional to be a "qualified person" entitled to immunity. Further, even if an entity or person was not a covered person, if the entity or person reasonably believed that the person was a covered person, immunity will still apply. See, e.g., 42 U.S.C. 247d-6d(a)(4)(B).

For the same reasons, Plaintiffs' contention the corporate and limited liability defendants do not meet the definition of "qualified person" because they are not natural persons who are licensed healthcare professionals fails. The HHS Secretary's expanded definition of "qualified persons" includes the business entities named as defendants and alleged to be responsible for administering, delivering, distributing or dispensing PPE and other covered countermeasures. The PREP Act defines "person" as an individual, partnership, corporation, association, entity, or public or private corporation, including a Federal, State, or local government agency or department. 42 U.S.C. 247d-6d(i)(5).

Similarly, Plaintiffs' contention that Defendants are not "program planners" is

**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS**

1   incorrect. The HHS Secretary's March 10, 2020 Declaration explains that a program
2   planner can be a "private sector employer or community group" that "carries out the
3   described activities" or provides a facility to administer or use covered
4   countermeasures.  85 Fed. Reg. at 15201. The complaint alleges Defendants failed
5   in their obligations to supervise or administer the administration, dispensing,
6   distribution, provision or use of covered countermeasures in their facility. All
7   Defendants are alleged to have failed in their activities, management, and decisions
8   directly related to dispensing of countermeasures for use by recipients, including
9   residents and staff. All defendants meet the definition of "program planner" and thus
10  are covered persons under the PREP Act and the HHS Secretary's Declaration.

11         **D.     Plaintiffs Have a Remedy Under the CICP and Indeed, that is**
12                  **Their Exclusive Remedy.**

13         Plaintiffs argue dismissal of their complaint would leave them with no
14  remedy. Their conclusion is based on their unsupported and erroneous interpretation
15  of the CICP program and their standing to bring a claim. The CICP program
16  specifies that the determination of eligibility and compensation is to be decided in
17  accordance with regulations issued, "or in such additional or alternate regulations as
18  the Secretary may promulgate for purposes of this section." 42 U.S.C. 247d-
19  6e(b)(4). While plaintiffs argue the CICP program provides a remedy only to a
20  plaintiff who claims to have received or used a covered countermeasure, and the
21  covered countermeasure directly causes the recipient injury or death, plaintiffs'
22  contention ignores the significant changes to the application of the PREP Act as a
23  result of the novel coronavirus pandemic. Likewise, Plaintiffs argue they cannot
24  state a claim for willful misconduct because no covered countermeasure was
25  administered to or used by Decedent. (Defendants agree Plaintiffs cannot state a
26  claim for willful misconduct under the PREP Act, but for different reasons.) There
27  is simply no precedent for Plaintiffs' speculative contentions that they would be left
28  with no remedy if the complaint were dismissed. Rather, as the PREP Act makes

clear, Plaintiffs' *exclusive* remedy is under the CICP.

**III.     PLAINTIFFS' COMPLAINT MUST BE DISMISSED BECAUSE IT FAILS TO SUFFICIENTLY ALLEGE CLAIMS UNDER ANY OF THEIR THEORIES OF RECOVERY.**

   **A.     The Elder Abuse Cause of Action is Insufficiently Alleged.**

   Plaintiffs argue Defendants were reckless by failing to protect against the spread of the coronavirus. But, the allegations of the complaint regarding improper use of PPE or other preventative measures do not amount to facts sufficient to establish the high standard of clear and convincing evidence that Defendants recklessly or maliciously engaged in "egregious conduct" amounting to a failure to provide medical care, as opposed to mere medical negligence. *Delaney v. Baker,* 20 Cal.4th 23, 34-35. The California Supreme Court in *Covenant Care, Inc. v. Superior Court*, (2004) 32 Cal.4th 771, 785, explained even gross negligence committed in the provision of professional services does not rise to the level of egregious conduct, actionable under the Act. Rather, Plaintiffs must plead and prove something more than negligence—that is, reckless, oppressive, fraudulent, or malicious conduct. *Carter v. Prime Healthcare Paradise Valley LLC* (2011) 198 Cal.App.4th 396, 406. "The latter three categories involve 'intentional,' 'willful,' or 'conscious' wrongdoing of a 'despicable' or 'injurious' nature." *Delaney v. Baker, supra,* 20 Cal.4th at 31.

   Here, Plaintiffs allege that Defendants failed to utilize and provide staff with appropriate PPE to help prevent the spread of COIVD-19 at the facility and to provide COVID-19 testing and to isolate COVID-19 positive residents. As explained above, Defendants have complete immunity with respect to these claims. Moreover, Plaintiffs' theories do not demonstrate recklessness, oppression, fraud or malice on the part of Defendants. Even if immunity did not apply, recklessness requires a knowing disregard of the dangers involved. *Delaney v. Baker*, *supra,* 20 Cal.4th at 32. Yet, the complaint contains no factual allegations supporting the

conclusory allegations that Defendants acted with a willful and conscious disregard of the safety of others. Imperfectly executed measures to address the spread of the virus at the early stages of the pandemic do not, as a matter of law, rise to the level of elder abuse. The *Winn* court rejected Plaintiffs' position here, explaining "plaintiffs [cannot] rely solely on defendants' allegedly substandard provision of medical treatment," even if that substandard treatment was reckless. *Winn v. Pioneer Medical Group, Inc.* (2016) 63 Cal.4th 148, 165. In so holding, the California Supreme Court rejected the Court of Appeal's conclusion that the same set of facts could show professional negligence and elder neglect based on defendants' "deliberate indifference to [the plaintiff's] increasingly urgent medical needs without regard for the excessive risk to which they exposed her by their failure to seek appropriate specialized care-that is, as an "egregious act[] of misconduct distinct from professional negligence" *Winn v. Pioneer Medical Group, Inc.*, 63 Cal.4th 148 quoting *Covenant Care*, *supra*, 32 Cal.4th at 784. As it stands, Plaintiffs' allegations amount to nothing more than potentially negligent acts, which is insufficient to proceed on a claim of Elder Abuse.

With respect to the absence of factual allegations establishing causation—a necessary element of each of Plaintiffs' claims—Plaintiffs simply reiterate their circular reasoning that Defendants failed to take precautions and Decedent died from COVID-19, skipping entirely the crucial causal connection allegations that must be plead with particularity for this statutory claim. *Carter v. Prime Healthcare Pardise Valley LLC, supra,* 198 Cal.App.4th at 407. Mere conclusory allegations that Decedent's death "was a direct result of" Defendants' conduct are not sufficient, as Plaintiffs posit. The Elder Abuse cause of action does not allege sufficient facts to support crucial elements of the claim and must be dismissed.

///

///

**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS**

**B.** **Joint and Several Liability Is Not Sufficiently Alleged Against Defendants Caravan Operations Corp., Matthew Karp or Benjamin Karp to Impose Liability on Those Defendants for Elder Abuse.**

Plaintiffs concede in their opposition that Defendants Matthew Karp and Benjamin Karp were not health care professionals. Dkt. 19 at 20. Plaintiffs point to no allegation that either of the individual defendants or Defendant Caravan Operations Corp. had a custodial relationship with Decedent. Plaintiffs' FAC and opposition accurately reflect the reality that these Defendants did not participate in Decedent's care at Glenhaven.

Instead, Plaintiffs insist the causes of action asserted against these Defendants are sufficiently alleged because of their misplaced alter ego and joint venture allegations. Dkt. 19 at 18.  Defendants have not, as Plaintiffs claim, ignored these allegations. Id. at 25. The allegations are simply not enough. Whether or not allegations of alter ego are alleged, the alter ego doctrine is merely an equitable remedy for imposing liability where certain conditions are met. The remedy of piercing the corporate veil does not substitute for the lack of factual allegations that any of these three defendants had the requisite robust custodial care relationship with Decedent to give rise to liability for elder abuse or on any other theory.

As thoroughly discussed in Defendants' moving papers, the appropriate test to determine whether a caretaking or custodial relationship exists is whether the "**health care provider had a *substantial* caretaking or custodial relationship, involving *ongoing responsibility for one or more basic needs*, with the elder patient**." *Winn v. Pioneer Medical Group, Inc*., 63 Cal.4th 148, 152 (2016) (emphasis added). Significantly, the court stated that a defendant's ***professional standing is immaterial*** to this determination.  Id. at 152, 158.

The challenge to Plaintiffs' complaint is that Plaintiffs' boilerplate allegations are insufficient to even establish that Defendants Caravan Operations Corp.,

**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS**

1   Matthew Karp or Benjamin Karp were in a joint venture with or the alter ego of

2   Defendant Glenhaven Healthcare, LLC.  Plaintiffs must plead specific facts beyond

3   generalities to raise the alter ego theory. Further, the law is well-settled that a claim

4   based on the theory of alter ego is not itself a claim for substantive relief.

5   *Hennessey's Tavern, Inc. v. American Air Filter Co.*, 204 Cal.App.3d 1351, 1358-

6   1359 (1988)[noting "[a]n alter ego defendant has no separate liability to plaintiff"].

7   Alter ego liability is a procedural device that is used when an otherwise inequitable

8   result would occur. Id.  In other words, a finding that Caravan Operations Corp.,

9   was the alter ego of Glenhaven Healthcare, LLC, would not create direct liability on

10  the part of Caravan Operations Corp., for any acts of Glenhaven Healthcare, LLC,

11  nor create the requisite actual custodial care relationship to impose direct liability on

12  Caravan Operations Corp., required under *Winn v. Pioneer Medical Group, Inc.*,

13  *supra,* 63 Cal.4th 148. Thus, the only test applicable in evaluating this motion is the

14  test delineated in *Winn*, which Plaintiffs factually devoid allegations clearly fail to

15  meet. *Carter v. Prime Healthcare Paradise Valley* (2011) 198 Cal.App.4th 396,

16  410.

17          Plaintiffs' contention that Defendants were in a joint venture that somehow

18  sufficiently alleges a custodial relationship on the part of Caravan and the individual

19  defendants also fails. A joint venture is "an undertaking by two or more persons

20  jointly to carry out a single business enterprise for profit." *Weiner v. Fleischman*, 54

21  Cal.3d 476, 482 (1991). There are three basic elements of a joint venture: "the

22  members must have ***joint control*** over the venture (even though they may delegate

23  it), they must share the profits of the undertaking, and the members each have an

24  ownership interest in the enterprise…" *Unruh-Haxton v. Regents of University of*

25  *California*, 162 Cal.App.4th 343, 370 (2008)(emphasis added). "The relationship of

26  joint ventures' is that of mutual ***agency***. . . ." *Campagna v. Market St. Ry. Co.*, 24

27  Cal.2d 304, 308 (1944) (emphasis added).  An agent is one who represents another,

28  called the principal, in dealings with third persons. California Civil Code, section

2295.  Control is the key characteristic of the agent/principal relationship. *Cislaw v. Southland Corp*., 4 Cal.App.4th 1284, 1292-1296 (1992).  If a parent corporation exercises such a degree of control over its subsidiary corporation that the subsidiary can legitimately be described as only a means through which the parent acts, or nothing more than an incorporated department of the parent, the subsidiary will be deemed to be the agent of the parent.  *See, Rollins Burdick Hunter of So. Cal., Inc. v. Alexander & Alexander Servs., Inc*., 206 Cal.App.3d 1, 9 (1988).

Likewise, under an alter ego theory of vicarious liability, liability may only be imposed where the parent controls the subsidiary to such a degree that the subsidiary is merely a conduit for the parent or is financially dependent upon the parent. *Institute of Veterinary Pathology, Inc. v. California Health Labs, Inc*., 116 Cal.App.3d 111, 119 (1981). Mere control of the budget is not sufficient to impose liability. *See Waste Management, Inc. v. Superior Court*, 119 Cal. App. 4th 105 (2004)(holding that negligently controlling or intentionally mismanaging a subsidiary's budget does not create a duty on the part of the parent corporation for the injuries caused by the subsidiary). Further, allegations that a person makes all of the management decisions are insufficient to cause the court to disregard the corporate entity. *Meadows v. Emett & Chandler*, 99 Cal. App. 2d 496, 499 (1950).

To justify piercing the corporate veil on an alter ego theory, a plaintiff must show that there is such a unity of interest and ownership between the two corporations that their separate personalities no longer exist, and that an inequitable result  would follow if the parent were not held liable. *Mesler v. Bragg Management Co*., 39 Cal. 3d 290,  300 (1985). To put it in other terms, the plaintiff must show "specific manipulative conduct" by the parent toward the subsidiary which "relegate[s] the latter to the status of merely an instrumentality, ***agency***, conduit or adjunct of the former . . . ." *Institute of Veterinary Pathology, Inc. v. California Health Laboratories, Inc*., 116  Cal. App. 3d 111, 119-120 (1981) (emphasis added). The FAC contains essentially no facts whatsoever even hinting at a joint venture

1  theory.

2      Plaintiffs' FAC fails to allege any of the requisite facts to give rise to joint

3  venture or alter ego liability. There are  no facts showing any financial dependence

4  to support even the inference of a unity of interest. Instead, the FAC contains only

5  conclusory allegations made in an attempt to get past the pleading stage.

6  Furthermore, even if the FAC did allege actual facts to support alter ego liability or

7  the existence of a joint venture, such allegations would not substitute for facts

8  establishing the necessary custodial relationship to sustain Plaintiffs' allegations.

9      **C.    The Custodial Negligence Cause of Action Is Not Sufficiently**

10         **Alleged.**

11      In response to Defendants contention Plaintiffs' allegations of custodial

12  negligence are insufficient, Plaintiffs argue simply that Defendants owed a duty of

13  care to Plaintiffs. Dkt. 19 at 27-29. Plaintiffs do not, however, address the

14  insufficiencies in their allegations of breach of a duty of care or of proximately

15  caused damages raised in Defendants' motion to dismiss. Instead, Plaintiffs contend

16  the third cause of action for custodial negligence incorporates by reference the

17  "general allegations", which set forth the "relevant facts" which are sufficient to

18  establish Defendants' breach of duty. Id. at 29.

19      As set forth in Defendants' Motion to Dismiss, the pleading of custodial

20  negligence is entirely bereft of any allegations to support an applicable standard of

21  care or the breach of that standard of care. The complaint alleges the *conclusion* that

22  Decedent's death was the result of Glenhaven's "actions and omissions." Complaint,

23  ¶ 35. But, no facts are alleged as to how Decedent contracted the virus or from

24  whom, whether there was any relationship between not providing PPE and Decedent

25  contracting the virus, or that even that any exposed employee or resident had the

26  virus or could have transmitted the virus to Decedent. It is simply not enough to

27  allege the virus exists and therefore it must be Defendants' fault that Decedent

28  contracted it and allegedly died from it. Mere speculation and conclusion does not

satisfy the requirements of a factually sufficient pleading. Accordingly, the motion to dismiss should be granted.

**D.    The Allegations and Prayer for Punitive Damages Should be Stricken.**

**1.    Code of Civil Procedure Section 425.13 Applies to Plaintiffs' Claims.**

Plaintiffs' blanket assertion that section 425.13 does not apply to claims against residential care custodians is misleading. Section 425.13 was enacted to protect health care providers from the onerous burden of defending against meritless punitive damages claims and asserting an elder abuse claim against Defendants does not in and of itself cause section 425.13 to be inapplicable. *College Hospital Inc. v. Superior Court* (1994) 8 Cal. 4th 704, 709.

Plaintiffs are seeking heightened damages based on alleged willful misconduct and on the elder abuse statutes against health care providers, but the availability of such remedies logically corresponds with the heightened level of culpability that a plaintiff must prove in order to prevail on those claims. The Legislature's goal in enacting the Elder Abuse Act was to provide heightened remedies for "acts of egregious abuse" against elder and dependent adults, while allowing acts of negligence in the rendition of medical services to elder and dependent adults to be governed by laws specifically applicable to such negligence. Welf. & Inst. Code §15657.2; *Delaney v. Baker* (1999) 20 Cal 4th 23, 35; *Benun v. Superior Court* (2004) 123 Cal. App.4th 113, 123.

In *Covenant Care, Inc. v. Superior Court* (2004) 32 Cal. 4th 771, the court held section 425.13 does not apply to a claim under the Elder Abuse Act. However, it is clear from that decision that the court did not consider that asserting a claim for "elder abuse"  renders Section 425.13 "virtually meaningless." *Id.* at 790. In fact, it is apparent from the *Covenant Care* decision that the court did not expect its decision to enable a medical malpractice plaintiff to avoid application of Section

15

**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS**

1  425.13 by the simple expedient of including a cause of action for "elder abuse" in
2  his or her complaint.

3     In *Covenant Care,* the court distinguished its earlier decision in *Central*
4  *Pathology Service Medical Clinic, Inc. v. Superior Court* (1992) 3 Cal. 4th 181,
5  noting that it addressed common law causes of action for fraud and intentional
6  infliction of emotional distress that arose in the medical malpractice context.
7  *Covenant Care, Inc., supra*, at 790. The court also explained the general rule that
8  statutory causes of action (e.g., for "elder abuse") must be pled with particularity,
9  and that a claim for punitive damages under the Elder Abuse Act requires proof, by
10 clear and convincing evidence, that the defendant has been guilty of recklessness,
11 oppression, fraud, or malice in the commission of the abuse. Id. The expectation is
12 that courts carefully examine the adequacy of allegations of "elder abuse" in the
13 context of medical care and treatment before allowing the plaintiff to assert a claim
14 for punitive damages without first obtaining leave of court as required by Section
15 425.13. Otherwise, Section 425.13 would, in fact, be rendered "virtually
16 meaningless."

17    In this case, Plaintiffs' claims arise in the "medical malpractice context" at
18 best.  Glenhaven is alleged to be a healthcare provider. Dkt. 3 at ¶¶ 20-21. As
19 detailed above and in Defendants' moving papers, the FAC does not contain
20 sufficient factual allegations to demonstrate recklessness, oppression, fraud or
21 malice as those terms are defined in California Civil Code section 3294, subdivision
22 (c). Plaintiffs have alleged no facts, just conclusions, indicating Defendants engaged
23 in an intentional and deliberate plan to injure Decedent or that Defendants acted
24 recklessly, knowing it would result in health risks to staff and residents.

25    As a result, the facts alleged do not justify an order allowing Plaintiffs to
26 assert a claim for punitive damages in this lawsuit without complying with the
27 requirements of section 425.13. The complaint's allegations regarding punitive
28 damages and the prayer for punitive damages should be stricken.

**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS**

## 2.    California Code of Civil Procedure section 425.13 is Applicable in Federal Court.

As Plaintiffs concede, there is no authority in the U.S. District Court for the Central District addressing the application of section 425.13 in federal court. The better reasoned decisions find that the statute is "intimately bound" with state substantive law and should apply.

For example, in *Thomas v. Hickman*, 2006 WL 2868967 (E.D. Cal. 2006), the court reasoned that,

> Absent any federal statute or rule, state procedural rules may be deemed 'substantive' for *Erie* purposes if limited to a particular substantive area (e.g., medical malpractice or insurance contracts) and designed to accomplish a particular substantive objective. [Citations.] State procedural rules that are intimately bound with substantive law may apply in federal actions where they in fact serve substantive state policies and more properly rules of substantive law within the meaning of Erie. [Citations.] Where a state procedural law is part of an integrated scheme for managing medical malpractice claims and constitutes a central feature of that scheme, that law is intimately bound with the substantive claim. [Citations.]

*Thomas v. Hickman*, *supra* at *40.

The *Thomas* court held that "[t]he legislative intent behind Section 425.13 shows the rule to be intimately bound to the state substantive causes of action for professional negligence. Section 425.13 applies to any action for damages arising out of the professional negligence of a health care provider. [Citations.]" Id. at 41. See also, *Allen v. Woodford,* No. 1:05-CV-01104-OWW-LJO, 2006 U.S. Dist. LEXIS 72988, 2006 WL 2868967, at *40 (E.D. Cal. Oct. 6, 2006)(section 425.13 is a central feature of the scheme of the substantive law of professional negligence); *Rhodes v. Placer Cnty.*, No. 2:09-CV-00489 MCE KNJ PS, 2011 U.S. Dist. LEXIS 35498, 2011 WL 1302240, at *21 (E.D. Cal. Mar. 31, 2011) (following *Allen* and *Thomas* and holding "plaintiff must petition the court for punitive damages . . . pursuant to Section 425.13"), adopted, 2011 U.S. Dist. LEXIS 47893, 2011 WL 1739914 (E.D. Cal. May 4, 2011); *Bock*, 2012 U.S. Dist. LEXIS 124699, 2012 WL

**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS**

1   3778953, at *19 (following *Thomas* without the benefit of briefing on the inter-

2   district split); *Fraher v. Surydevara*, No. 1:06-cv-01120-AWI-GSA PC, 2009 U.S.

3   Dist. LEXIS 41340, 2009 WL 1371829, at *2 (E.D. Cal. May 15,

4   2009) [**45] (same); *Moreno v. The GEO Group, Inc*., No. 1:07-CV-01630-CKJ,

5   2009 U.S. Dist. LEXIS

6         Here, Plaintiffs are not seeking heightened relief under a federal statute but

7   instead asserting a claim for punitive damages as part of their state law claims

8   against a healthcare provider. As such, section 425.13 is intimately bound with the

9   substantive claims Plaintiffs present and applies in this action.

10                **3.**      **Plaintiffs Have Not Sufficiently Alleged Facts to Support**

11                     **Recovery of Punitive Damages.**

12         Plaintiffs argue their allegations of misconduct warrant punitive damages

13   pursuant to their elder abuse and willful misconduct causes of action, relying on

14   cases having nothing to do with the entirely boilerplate, factually devoid allegations

15   concerning punitive damages made in this case. Dkt. 19 at 31-32. Plaintiffs cite *Hills*

16   *v. Intensive Air Inc.,* 2007 WL 521222 (N.D. Cal. 2007), claiming that case alleged

17   misconduct just like that alleged in this case that was found to state a punitive

18   damages claim. Dkt. 19 at 31-31. The *Hills* case said no such thing. Rather, the court

19   merely held that the allegations of neglect (leaving a patient on a tarmac in 100

20   degree heat for 30 minutes resulting in severe sunburn and other injuries were

21   sufficient to state a cause of action for elder abuse. Id. at *5-6.

22         Similarly, the case of *Pfeifer v. John Crane, Inc.,* 220 Cal.App.4th 1270,

23   1300-1301 (2013), provides no support for Plaintiffs' contention.  That case

24   involved a manufacturers failure to warn its customers of the known dangers of

25   asbestos dust in their use of sheet gaskets manufactured by John Crane, Inc, despite

26   the fact it warned its own employees of that danger. The *evidence* was found

27   sufficient to show malice. Id. The case contains no discussion of what constitutes

28   sufficient allegations of malice, fraud or oppression or deliberate disregard of a

known or obvious risk that are lacking here.

Plaintiffs do not address the arguments in favor of striking their punitive damages claims regarding their failure to allege any facts in support of the contention Defendants acted with disregard of a known risk, or that any alleged misconduct proximately caused Decedent's death. Plaintiffs make no response to the fact their allegations fail to set forth the "who, what, when, where, and how" of the alleged willful misconduct to support punitive damages. *Vess v. Ciba-Beigy Corp.*, 317 F.3d 1097, 1106 (9th Cir. 2003). Plaintiffs' conclusory allegations and mere speculation and surmise about how the virus was transmitted to Decedent are insufficient to support a punitive damage claim and such claims must be stricken from the complaint.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Defendants request this Court order dismissal of the First Amended Complaint and/or strike the allegations regarding punitive damages from the First Amended Complaint.

DATED: August 20, 2020

LEWIS BRISBOIS BISGAARD & SMITH LLP

By: */s/* Lynnette A. Christopoulos
_____
Kathleen M. Walker
Lynnette A.Christopoulos
Attorneys for Defendants GLENHAVEN
HEALTHCARE LLC; CARAVAN
OPERATIONS CORP.; MATTHEW
KARP, an individual; and BENJAMIN
KARP, an individual

# FEDERAL COURT PROOF OF SERVICE

Jackie Saldana v. Glenhaven Healthcare LLC, et al.
Federal Case No. 2:20-cv-05631-FMO-MAA

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

At the time of service, I was over 18 years of age and not a party to the action. My business address is 633 West 5th Street, Suite 4000, Los Angeles, CA 90071.  I am employed in the office of a member of the bar of this Court at whose direction the service was made.

On August 20, 2020, I served the following document(s):  **DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS**

I served the documents on the following persons at the following addresses (including fax numbers and e-mail addresses, if applicable):

Scott C. Glovsky, Esq.
Roberta Liao, Esq.
Al Heath, Esq.
LAW OFFICES OF SCOTT
GLOVSKY, APC
343 Harvard Avenue
Claremont, CA 91711
Tel. No.: (626) 243-5598
Fax. No.: (866) 243-2243
Email: sglovsky@scottglovskylaw.com;
rliao@scottglovskylaw.com;
aheath@scottglovskylaw.com

The documents were served by the following means:

☒    (BY COURT'S CM/ECF SYSTEM)  Pursuant to Local Rule, I electronically filed the documents with the Clerk of the Court using the CM/ECF system, which sent notification of that filing to the persons listed above.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on August 20, 2020, at Los Angeles, California.

*/s/ Yissel Lopez*

Yissel Lopez

4847-3818-1832.1

1

**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS**